## INTERNATIONAL FINANCE CO. v. NORTHWESTERN DRUG CO.

(District Court, D. Minnesota, Fourth Division.  June 13, 1922.)

1. **Evidence ☜423(6)—Extrinsic evidence not admissible to show acceptance negotiable or nonnegotiable.**

Extrinsic evidence is not admissible to show whether an acceptance is negotiable or nonnegotiable.

2. **Bills and notes ☜163—Customer's acceptance held a negotiable instrument.**

An instrument designated a "customer's acceptance," specifying that acceptor's obligation "arises out of the purchase of goods from the drawer," *held* negotiable, though "accepted for payment as per Reolo contract for amount and date hereon," since the instrument contained an unconditional promise to pay a sum certain in money, as required by Minnesota Negotiable Instruments Law, § 1 (Gen. St. 1913, § 5813) in view of sections 2, 3 (sections 5814, 5815).

3. **Trial ☜59(1)—Where plaintiff has assumed burden in first instance of proving itself holder in due course, defendant could not, without first rebutting such evidence, show infirmities between original parties.**

In an action on a negotiable instrument, where plaintiff not only introduced the instrument and proved his ownership thereof, but introduced testimony tending to prove himself an owner in due course, testimony as to defenses between the original parties was immaterial until the defendant had rebutted plaintiff's testimony tending to show plaintiff a holder in due course.

At Law.  Action by the International Finance Company against the Northwestern Drug Company.  On objection to certain testimony.  Objection sustained.

John Lind, of Minneapolis, Minn., for plaintiff.
Alvord C. Egelston, of Minneapolis, Minn., for defendant.

BOOTH, District Judge.  This discussion has arisen out of an objection made by the plaintiff to the introduction of certain testimony.  That testimony, as I understand, was intended to be along the line of showing the existence of a defense against the instrument in suit as between the original parties thereto, and the objection was aimed at all that line of testimony.  Now, the status of the case at present is that the plaintiff has introduced testimony tending to show that it is the owner and possessor of this instrument, that it bought it before maturity, for value, and that the instrument is past due and unpaid; and plaintiff has gone further, and introduced testimony tending to show that it is a "holder in due course" of this instrument— that is, that it took the instrument without any actual notice of any infirmity in the instrument or of defective title—and it has introduced the instrument itself.  The claim is that on its face it is regular, and the testimony on the part of the plaintiff also tends to show that this instrument was taken by it for value and in good faith.

The position of the plaintiff is that this "acceptance" in suit is a negotiable instrument, and that, the plaintiff having introduced the testimony that I have mentioned, any testimony on the part of the defendant as to any defenses that may have existed in reference to this acceptance between the original parties thereto are immaterial,

unless testimony is introduced first showing actual notice by the plaintiff of such defenses, or bad faith on the part of the plaintiff in taking this acceptance.

On the other hand, the position of the defendant, if I apprehend it rightly, is that the acceptance here in controversy is a nonnegotiable instrument, and that therefore all defenses are open against the plaintiff which would be available as between the original parties; and, if I understand the position of the defendant correctly, it also claims that it may offer evidence outside of the instrument itself to show that it was not negotiable, and, further, that the evidence attempted to be introduced, when objection was made, is admissible to show notice of infirmity in the instrument to the plaintiff, or to show bad faith on the part of the plaintiff in taking the acceptance.

Now, if those are the respective positions of the parties, there seem to be at least four questions raised here: First, whether extrinsic evidence is admissible to show whether this acceptance is negotiable or nonnegotiable; second, if such evidence is not admissible, whether the instrument on its face shows that it is not negotiable; third, whether the offered evidence is material on the question of notice, actual notice to the plaintiff of any infirmity in the acceptance, or tends to show bad faith on the part of the plaintiff in taking the acceptance; fourth, should evidence at present be confined to the question of actual notice to the plaintiff of infirmities in this acceptance, or of bad faith on the part of the plaintiff in taking it—in other words to the question whether plaintiff is a "holder in due course"?

[1] Now, as to the first question, whether extrinsic evidence is admissible to show whether this instrument is negotiable. I have examined whatever cases I have been able to during the brief period of our adjournment, and I have not found a case where such evidence was admitted, and it seems to me that the whole theory of the law merchant as to negotiable instruments would be opposed to the allowance of such testimony. An instrument may be on its face negotiable, or on its face nonnegotiable; but to say that an instrument is negotiable or not, according as this may be determined by extrinsic evidence, would throw the whole law of commercial paper into confusion. Neither in the Louisiana case, Continental Co. v. Times Co., 142 La. 209, 76 South. 612, L. R. A. 1918B, 632, nor in the Massachusetts case, National Bank v. Wentworth, 218 Mass. 30, 105 N. E. 626, was there any suggestion that outside evidence could be introduced to determine whether the instruments there being considered were negotiable; but on the face of the instrument in the Louisiana case it was held that it was not negotiable, and on the face of the instrument it was held in the Massachusetts case that it was negotiable. So that I shall hold that the extrinsic evidence offered for the purpose of showing that this acceptance was nonnegotiable was not admissible; that that question is one of law, to be decided by the court upon the face of the instrument.

[2] The second question is whether, upon the face of this instrument, it is negotiable or nonnegotiable. This instrument is called a "customer's acceptance," and it reads:

"Four months after date, pay to Reolo, Incorporated, of Cleveland, Ohio, or order, three thousand dollars. The obligation of the acceptor hereof arises out of the purchase of goods from the drawer. Value received and charge to account of Reolo, Incorporated. [Duly signed.] To Northwestern Drug Company, Minneapolis, Minnesota. Accepted for payment as per Reolo contract for amount and date shown hereon. [Signed] Northwestern Drug Company," by the manager.

The Negotiable Instruments Law is in force in Minnesota. Laws 1913, c. 272 (Gen. St. 1913, §§ 5813–6009). The requirements of a negotiable instrument are found in section 1 of that law (section 5813), and amongst others, and the one that we are here concerned with, is this:

"An instrument * * * must contain an unconditional promise or order to pay a sum certain in money."

The provisions of the Negotiable Instruments Law, as I understand the situation, are not entirely new provisions. There is nothing revolutionary about the Nogotiable Instruments Law. It is to a very large extent merely declaratory of what was the law before. In some few respects it may have altered the law, but in most respects it is simply a codification of existing law; and it has always been the law, or at least for a great many years, that a negotiable instrument must be one that contains an unconditional promise or order to pay a sum certain in money. Now, sections 2 and 3 (sections 5814, 5815) are simply explanatory of section 1. Section 3, which counsel have referred to and dwelt upon, that an unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with (1) an indication of a particular fund out of which a payment is to be made, or (2) a statement of the transaction which gives rise to the instrument, is nothing more nor less than an attempted explanation of the part of section 1 that I have read, that "an instrument * * * must contain an unconditional promise or order to pay a sum certain in money." The last part of section 3, that the instrument may contain a statement of the transaction which gives rise to the instrument without destroying its negotiability, has given rise to a great deal of controversy; and some of the commentators have thought that it would be better if that particular part of the Negotiable Instruments Law were eliminated; that, instead of clarifying and explaining section 1, it adds confusion to it. Whether that is the result or not I do not undertake to say.

The test, however, is, so far as we are concerned here: Does the instrument contain an unconditional promise to pay a sum certain in money? There is no question about the sum certain in money; but the question is whether it contains an unconditional promise to pay. It may be that the cases that have been referred to by counsel, and other cases that I have seen, can all be harmonized; but I shall not at this time attempt to harmonize them. On the one hand, we find such cases as Continental Company v. Times Company, supra, which holds that a clause similar in some respects to the clause here, "As per Reolo contract," was sufficient to destroy the negotiability. On the other hand, we find such cases as National Bank v. Wentworth, 218

Mass. 30, 105 N. E. 626, holding that a quite similar clause was not sufficient to destroy the negotiability.

It is a very easy thing for parties, when they are drawing an instrument, to make it either negotiable or nonnegotiable, as they see fit. It does not require any extensive use of language or any particular knowledge of law. If the instrument here in question had read "Accepted for payment *conditionally*," the use of that single word would have destroyed its negotiability. Or if the instrument had read "Accepted for payment *subject to the conditions of* the Reolo contract," I think there would have been no question that those words destroyed the negotiability. But this form of words, "As per Reolo contract," does not state specifically that the acceptance for payment is subject to conditions of any contract. There is nothing in the acceptance to show the date when the Reolo contract was entered into, or whether performance had been completed or not. Therein may lie the distinction between such cases as the Massachusetts case, on the one hand, and the Louisiana case, on the other. In the Louisiana case it did appear on the face of the instrument that the payment was "per" a contract still unperformed, still executory in its nature. Whether or not that is sufficient to distinguish that case from the others I will not undertake to say, but it is one distinguishing feature at least.

I am of the opinion, in view of the cases of National Bank v. Wentworth, 218 Mass. 30, 105 N. E. 626, Snelling Bank v. Clasen, 132 Minn. 404, 157 N. W. 643, 6 A. L. R. 1663, Waterbury Co. v. Ivey, 99 Misc. Rep. 260, 163 N. Y. Supp. 719, and other cases along the same line, that this instrument in suit on its face is a negotiable instrument, and that the words "As per Reolo contract" were not sufficient to destroy its negotiability.

[3] The third question: Is the offered evidence material on the question of notice to the plaintiff or any infirmity in the instrument, or as tending to show bad faith on the part of the plaintiff in taking the acceptance? Usually the course of proof on a negotiable instrument is that the plaintiff introduces the instrument, evidence of his ownership, evidence that the instrument has not been paid, and rests, and it is incumbent then on the defendant, if the instrument has been originally negotiated in fraud, or if there are other defenses between the original parties which may be available against the present owner, to go forward and show what that fraud was, what those defenses are, and then it becomes incumbent upon the plaintiff to take up the line of proof and establish, if he can, that he is a holder in due course; that is, that he purchased for value, before maturity, without notice of any infirmity, and in good faith.

But in this particular case the plaintiff has seen fit to go forward in the first instance and introduce testimony which, if uncontradicted, establishes the fact that the plaintiff is an owner in due course. So that, until the defendant takes up the line of proof, and rebuts the testimony that plaintiff has put in, which tends to show that it is a holder in due course, all testimony as to defenses between the original parties to the instrument becomes immaterial, at least temporarily. That has been the established practice, as I understand it, in Minne-

sota. In the case of Merchants' & Mechanics' Sav. Bank v. Cross, 65 Minn. 154, 67 N. W. 1147, the plaintiff introduced a note with the indorsements, and then went further and introduced the depositions of three witnesses, which, if not rebutted, would show that the plaintiff was an innocent purchaser for value before maturity in the usual course of business. Plaintiff then rested. The defendants, amongst other things, offered to introduce evidence concerning a breach of warranty, which was set up in the answer. This was rejected by the court, and the defendants then rested, and the court directed a verdict for plaintiff. On appeal to the Supreme Court of the state of Minnesota the court said:

"As to the third offer, the evidence would have been competent if plaintiff had merely introduced in evidence the note with the endorsements thereon, and then rested. The defendants would then have been entitled to introduce in evidence their defense to the note, and that would have thrown on plaintiff the burden of showing that it was an innocent purchaser for value before maturity, in the usual course of business. But it assumed this burden in the first instance, and made a showing that the defense interposed to the note would not have been available, unless this showing was rebutted, which the defendants did not offer to do. And it is to be inferred from their course of procedure that they did not intend to attempt to rebut it. Then the court was justified in refusing to receive evidence which, under the circumstances, would merely prolong the trial, and avail the defendants nothing."

That practice has been followed in the courts of Minnesota. There is another case, I think in 102 Minnesota,[1] along the same line. So that it seems to me, for the present at least, the third question must be answered in the negative, that the evidence attempted to be introduced is not material at this stage.

The fourth question—whether the evidence should be confined at present to the question of notice to plaintiff or bad faith on the part of the plaintiff—should be answered in the affirmative. In other words, it seems to me that, as the case now stands on the state of the evidence, the defendant, if it wishes to go forward, should be confined in its proof, temporarily at least, to the question whether the plaintiff was a holder in due course. And it seems to me, as I have already stated, that the evidence that was attempted to be introduced was not material on that particular point.

I think the objection, therefore, should be sustained.

[1] Probably First Nat. Bank of Morrison v. Busch, 102 Minn. 365, 113 N. W. 898.