Otto G. Weber, Appellee, v. Keith Railway Equipment Company, Appellant.

**Gen. No. 32,162.**

Opinion filed March 29, 1928.

CHAPMAN & CUTLER, for appellant.

JAY STOUGH and HENRY L. CHATROOP, for appellee.

Mr. Justice Holdom delivered the opinion of the court.

This is an action of assumpsit brought on two negotiable instruments, to wit, two $1,000 equipment trust certificates or bonds and the coupons attached thereto of the Keith Railway Equipment Company, dated October 1, 1920, and payable on the first day of October, 1925, at the office of Union Trust Company, Chicago, and optionally at the Bankers Trust Company in New York, with interest at 7 per cent per annum, payable semiannually, on the first days of April and October of each year upon presentation and surrender, as they severally mature, of the attached interest coupons.

The bonds are in the following form:

"STATE OF ILLINOIS

Number                                    Dollars
M 236                                      1000

UNITED STATES OF AMERICA
KEITH
RAILWAY EQUIPMENT COMPANY
Seven Per cent Equipment Trust
Gold Certificate

KEITH RAILWAY EQUIPMENT COMPANY, a corporation, organized under the laws of the State of Illinois (hereinafter, for convenience, called the 'Company'), for value received, hereby promises to pay to the bearer

ONE THOUSAND DOLLARS

($1,000) in gold coin of the United States of America, of or equal to the present standard of weight and fineness, on the First day of October, 1925, at the office of Union Trust Company, in the City of Chicago, State of Illinois, or at office of Bankers Trust Company, in the City of New York, State of New York, at the option of the holder hereof, and to pay interest thereon from October 1, 1920, at the rate of seven per cent (7%) per annum, payable semiannually, on the First

days of April and October of each year, but only upon presentation and surrender as they severally mature of the interest coupons hereto annexed.

"Both principal and interest of this obligation are payable, without deduction for normal Federal income taxes up to but not in excess of two per cent, which the Company or the Lessor may be required to pay thereon or to retain or deduct therefrom under any present or future law.

"THIS CERTIFICATE is one of a series of coupon certificates of the Company known as its '7% Equipment Trust Gold Certificates,' of like date an tenor, except as to principal and date of maturity, in a total principal amount of One Million Five Hundred Thousand Dollars ($1,500,000), * * *.

"THIS CERTIFICATE shall pass by delivery * * * *."

Then there is a clause for anticipatory redemption before maturity, stating the terms thereof. Thereafter appears the following:

"In case of default on the part of the Company as provided in the aforesaid Contract of Lease, the principal amount hereof may be declared due and payable prior to maturity hereof in the manner, upon the terms and with the effect in said Contract of Lease provided."

Then follows the attestation clause and the signatures of the Keith Railway Equipment Company, by O. L. Keith, president, attested by W. C. Webers, secretary, and sealed with the corporate seal, and statement that revenue stamps required by law have been affixed to the trust indenture and canceled.

The following is a copy of the coupon interest note:

"No. 10     ON THE FIRST DAY OF      $35.00
OCTOBER, 1925,

"KEITH RAILWAY EQUIPMENT COMPANY will pay to bearer without deduction for Federal in-

come taxes to the extent of but not exceeding two per cent (unless the note herein mentioned shall be sooner redeemed) at the office of Union Trust Company, in the City of Chicago, State of Illinois, or at the office of Bankers Trust Company, in the City of New York, State of New York, at the option of holder hereof, Thirty-Five and 00/100 Dollars ($35.00), in United States gold coin, being six months' interest then due on its Equipment Trust Gold Certificate No. M236.

W. C. WEBERS,
Secretary.''

Then follows a certificate in words as follows:

''This is to Certify that this note is one of the notes described in the within mentioned contract of lease, dated October 1, 1920, from Union Trust Company, as Trustee, Lessor, to Keith Railway Equipment Company, Lessee.

UNION TRUST COMPANY, as Trustee, Lessor,
By R. D. Chenin,
Secretary.''

There was a trial before the court and jury. At the conclusion of the proofs by both parties each moved for an instructed verdict. That of defendant was denied and that of plaintiff given in pursuance of which the jury returned a verdict finding the issues for the plaintiff and assessing the plaintiff's damages in the sum of $2,274, upon which verdict judgment was entered, and defendant brings the record to this court by appeal.

The declaration declared upon the bonds in the usual form by a special count, to which were added consolidated common counts. There was an affidavit of claim filed with the declaration in which plaintiff claimed there was due from defendant, after allowing all just credits, deductions and set-offs, $2,128, to which declaration defendant interposed the following plea in abatement:

"Defendant says that the two certificates or bonds sued upon were issued under the terms of a certain contract of lease dated October 1, 1920, between Union Trust Company, as Trustee, Lessor, and defendant, Keith Railway Equipment Company, Lessee, as referred to in each of said bonds, and that each of said bonds is subject to all the terms and conditions set forth in said lease, among which conditions was one in Article Eight thereof, reading as follows:

" 'No holder of any of the certificates herein provided for shall have the right to institute any suit, action, or proceeding, at law or in equity, upon said certificates, or for the enforcement of any of the provisions of this lease, or for the appointment of a receiver, or for any other remedy under or upon this instrument or the certificates or coupons referred to herein, unless such holder shall previously have given to the Lessor written notice of any existing default and of the continuance thereof, as aforesaid, and unless, also the holders of fifteen per cent in amount of the certificates hereby secured shall have made a written request upon the Lessor so to do; nor unless also, such holder or holders shall have offered to the Lessor adequate security and indemnity against costs, expenses and liabilities to be incurred by reason of such action, suit or proceeding, and unless such Lessor shall thereupon refuse to act or shall fail so to do for a period of thirty days thereafter—it being understood and intended that no one or more of the holders of the said certificates shall have any right in any manner whatsoever to enforce the lien of this lease by his or their action, or to enforce any right hereunder, except upon the conditions herein provided for. All proceedings hereunder shall be instituted, had, and maintained by the said Lessor, for the equal benefit of all the holders of such certificates. The owners of all the certificates provided for herein shall participate without preference, priority, or distinction, except as here-

in provided, in all payments made by the Lessee to the Lessor hereunder and in all collections made by the Lessor from the Lessee hereunder, whether such payments or collections are voluntarily made or made through the enforcement of the covenants of this lease or in, through or under any judicial proceeding.'

"Defendant further sets forth in said plea, that the plaintiff did not, before the issuing of the writ herein, give to the Lessor, Union Trust Company, written notice of any existing default in said certificates and of the continuance thereof, as provided in said lease, and that the holders of 15% in amount of the certificates or bonds secured thereby did not make a written request upon the Lessor to institute a suit or action on said certificates or bonds, and the plaintiff did not offer to said Lessor adequate security or indemnity against costs, expenses and liabilities to be incurred by reason of any action on said certificates or bonds.

"Wherefore, the defendant prays judgment, etc."

With this defendant also filed an affidavit supporting said plea.

Plaintiff replied to said plea as follows:

"Plaintiff alleges, that the two equipment trust certificates or bonds mentioned in defendant's plea are the two promissory notes or bonds sued upon, together with certain interest coupons. Plaintiff then sets out a copy of said bonds sued upon and interest coupons which have heretofore been abstracted.

"Plaintiff further says in said replication, that each of said bonds and each of said coupon notes were sold and delivered to plaintiff by the Union Trust Company for a valuable consideration prior to October 1, 1925, and without the plaintiff having any notice or knowledge of any of the terms or conditions of the contract of lease referred to in the defendant's plea. Plaintiff further alleges he bought and paid for each of said bonds and interest coupons after their date and before maturity, paying therefor the sum of Two Thousand

Dollars ($2,000), without notice of any of the terms or conditions of said lease. Plaintiff alleges further that he became the owner of said bonds and coupons, on, to wit, August 1, 1922, and has been the legal owner and holder in due course thereof since that time. Plaintiff further alleges that neither of said bonds or coupons 'was or is, so far as this plaintiff is concerned, subject to any of the terms or conditions in the alleged contract of lease referred to in defendant's said plea.' "

Defendant's counsel contend that the provision in the bond, to wit, "to which Contract of Lease reference is hereby made for a statement of the nature and extent of the security afforded thereby, the rights of the holders of said certificates in respect of such security, and the terms and conditions under which said certificates are issued," was sufficient to incorporate into the certificate itself all the applicable provisions of the contract of lease to which it refers, and further contended that the wording of such lease was to clearly prohibit a suit at law upon the certificate unless such conditions had been complied with, the reason being that when one purchased a bond containing a reference that it was isued under the terms of a mortgage or contract, to which reference is made, he thereby enters into contractual relations with the other holders and under the provisions referred to must act subject to the conditions recited in order to protect the interests of the majority and preserve the value of the security. This contention is met by plaintiff's insisting that the instruments sued upon were negotiable instruments; that plaintiff is a holder in due course, and that under the provisions of section 3 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 23, "An unqualified order or promise to pay is unconditional within the meaning of this Act, though coupled with: * * * a statement of the transaction which gives rise to the instrument."

At the conclusion of the arguments the learned court stated:

"The only question is whether or not the purchaser of one of these certificates under that language was bound to take notice and examine that contract to find out if he didn't have a right to sue unless he gave notice to the trustees or got 15 per cent of the holders to join with him in a suit. The only question is whether that was sufficient under the decisions to require him, if he was required, to go and examine and take notice of it. Then he would not be a bona fide holder without notice, and this defense would be good. Then he would not have any standing. He is a bona fide holder in every respect except the question of notice. In my humble judgment, it is a quiet way of slipping something over. If it was made subject to it, then one would have to go and examine that instrument."

After this pronouncement by the court, defendant made an offer to prove the following:

"That he intended to offer in evidence the contract of lease dated October 1, 1920, between the defendant, Keith Railway Equipment Company, and Union Trust Company, as Trustee, to show that by the terms of that contract of lease, plaintiff was not entitled to maintain this action unless he had previously complied with the conditions set out in the contract of lease, and that he also intended to offer proof of the amount of certificates outstanding at the time this suit was commenced, and of the fact that no written notice or request by the holders of the requisite amount of certificates had been made upon the trustee, and that no indemnity had been offered to the trustee. Whereupon the court said: 'All right, you make your offer and I will sustain an objection to it.'"

Upon objection the offer to make proof was denied by the court.

To summarize the foregoing the crucial and decisive question for our decision is whether or not the instruments sued upon are negotiable instruments within the meaning of section 21 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 21, of this State. This provision reads:

"An instrument payable in money, to be negotiated, must * * * contain an unconditional promise or order to pay a sum certain in money."

As the court said in *Victor v. Warner*, 248 Ill. App. 35, so we say here:

"Let us analyse the words of the act as applicable to the note in suit. It contains an unconditional promise to pay a certain sum of money at a certain time without restriction. * * * The note in every essential particular fulfils the requirements of the act *supra* to make it negotiable."

And so we hold here that the instruments sued upon and appearing in evidence in the record are negotiable instruments, title thereto passing by delivery and in every essential particular fulfilling the requirements of the act *supra*, making them negotiable instruments.

Counsel for appellee say in their brief:.

"The Union Trust Company, in this proceeding, appeared not only in two incompatible positions, but in four or five hostile and antagonistic roles. It was the lessor in the so-called contract of lease, which was supposed to secure the bonds sued upon; it was also the trustee named in said lease and the bonds; it was the registrar of said bonds, whenever they might be registered; its office in Chicago was the place where the bonds were payable by their terms; and it was the seller of the bonds in question to the plaintiff here. In addition to all that, its agent appeared upon the trial as a witness for the defendant, who was the bank's purported lessee and debtor."

There is much truth in this statement. The bank trustee, it is in evidence, sold to plaintiff the bonds in suit. The title by the bank's act of delivery passed to the purchaser plaintiff, and, at least inferentially, the conduct of the bank was notice to the plaintiff in making the sale that the instruments were negotiable. If they then believed they were not negotiable instruments, they were guilty of conduct which tended to deceive the purchaser in leading him to believe that he was purchasing negotiable instruments, when as now contended they were not so. Is it to be contemplated for a moment that plaintiff would have purchased the bonds sued upon, if the bank had told plaintiff at the time that the instruments were non-negotiable? We opine not.

The setting forth in the instrument of the collateral security which secured the payment of the bonds in no way tended to affect or destroy their negotiability. The instruments sued upon, in themselves, are negotiable by their express terms to the point where there is a recital of the fact that they are secured by collateral partially therein described.

In *Victor v. Warner, supra,* we disposed of a similar question, and decided that a mere recital that it was secured by chattel mortgage did not destroy its negotiability, and said:

"The negotiability of the note, *supra,* was not impaired because its payment was secured by a chattel mortgage * * *. In support of this proposition defendants contend that because the note is secured by a chattel mortgage it is not payable unconditionally. This contention finds no support in any of the terms of the note. It is payable for a sum certain and without condition. The chattel mortgage is collateral security only. If we were to concede the correctness of this contention, then every note secured by collateral would be non-negotiable, and bankers who hold such notes could not pass title by * * * delivery. This

would make a new and novel condition in banking circles and destroy what has heretofore been regarded as the law governing notes secured by collateral.''

If it had been the design and purpose of the drawer of the instruments in suit to stamp them as non-negotiable instruments, it would have been very easy to make a provision to that effect, so that they who bought might have notice of such non-negotiability, as said in *International Finance Co. v. Northwestern Drug Co.,* 282 Fed. 920:

''It is a very easy thing for parties, when they are drawing an instrument, to make it either negotiable or nonnegotiable, as they see fit. It does not require any extensive use of language or any particular knowledge of law. If the instrument here in question had read 'Accepted for payment *conditionally,*' the use of that single word would have destroyed its negotiability. Or if the instrument had read 'Accepted for payment *subject to the conditions* of the Reolo contract,' I think there would have been no question that those words destroyed the negotiability. But this form of words, 'As per Reolo contract,' does not state specifically that the acceptance for payment is subject to conditions of any contract.''

Furthermore, there is no reference in the instruments in suit that they were made subject to the terms and conditions of the instrument securing them. The trust deed securing the bonds to the bank were not by apt words or by reference made a part of the bonds, so that a purchaser was not put upon notice as to whether or not the terms of the trust deed affected the negotiability of the bonds, which upon their face under the law were negotiable.

*Doyle v. Considine,* 195 Ill. App. 311, is somewhat in point, where Mr. Justice McSurely, in writing the opinion, said:

''As to the second point, the note says: 'This note is

given in accordance with a land contract of even date herewith between E. H. Bauch and J. P. Considine.' By the Negotiable Instruments Act, ch. 98, sec. 21 (J. & A. ¶ 7642), it is provided that a 'promise to pay is unconditional within the meaning of this act, though coupled with * * * a statement of the transaction which gives rise to the instrument.' That is this case, and the instrument is negotiable, and an inquiry into the contract was incompetent.''

We think the dicta of this decision sustains our conclusion that the instruments in suit are negotiable instruments under the Negotiable Instruments Act, *supra*.

There are several decisions in this State holding that the language used in a note or other commercial instrument will not have a tendency to destroy its negotiable character, unless by such terms payment is dependent or conditional upon some instrument to which it refers. Among these cases are *Biegler v. Merchants' Loan & Trust Co.*, 164 Ill. 197; *Siegel v. Chicago Trust & Savings Bank*, 131 Ill. 569; *Hunter v. Clarke*, 184 Ill. 158; and *Zollman v. Jackson Trust & Savings Bank*, 238 Ill. 290. In the latter case the court said:

''The appellant contends that since the notes in question showed upon their face that they were secured by a trust deed appellee cannot be regarded as an innocent holder of such notes, and that the purchaser should be held to have notice of all facts that inquiry would have disclosed. This is a misapprehension of the effect of such recital. A recital upon a promissory note, to destroy its negotiability, must be of a kind that in some respects qualifies or makes uncertain or conditional the promise. (*Siegel, Cooper & Co. v. Chicago Trust and Savings Bank*, 131 Ill. 569; *Biegler v. Merchants' Loan and Trust Co.*, 164 id. 197.) In the case last above cited it was held that a note which recited that 'this note is secured by a lien upon

my interest in certain horses described in agreement this day made between G. W. Leihy and myself,' was nevertheless a negotiable instrument, and that a purchaser for value before maturity held such note free from any latent defenses that the maker might have against the payee.''

We think the foregoing states the doctrine applicable to the condition of the case at bar. Plaintiff undoubtedly has a right to resort to the security to realize payment of the indebtedness held by him and secured by such security, but if he should institute an appropriate suit, he would then be bound to proceed in accordance with the terms of the instrument securing such payments, but we hold that such conditions have no effect in directing the method which plaintiff should follow in his action upon these negotiable instruments. While it is true there are cases cited by defendant in the Federal courts which hold to the contrary doctrine, they are not binding on this court. Our guide is the decisions of our own Supreme Court above quoted.

We find no reversible error in the record before us, and for the reasons herein stated the judgment of the superior court is affirmed.

*Affirmed.*

TAYLOR, P. J., and WILSON, J., concur.