Atlas Coal & Coke Company, Appellee, v. Kentucky River Coal Mining Company et al., Appellants.

Gen. No. 33,446.

Opinion filed June 24, 1929.

GALLAGHER, KOHLSAAT, RINAKER & WILKINSON, for appellants.

POMEROY & MARTIN, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff, as payee of a document which for reasons hereafter stated we hold to be a negotiable instrument, brought an action against the Kentucky River Coal Mining Company, the maker of the note, and R. C. Whitsett, J. C. Morrison and August F. Poehlmann, indorsers of the note, to recover a balance claimed to be due on the note. The maker of the note was not served, so the indorsers are the only defendants. The jury returned its verdict in favor of the plaintiff and against the three indorsers and assessed damages at $6,211.40. Judgment was entered on the verdict and the defendants appeal.

The record discloses that the Kentucky River Coal Mining Company was the lessee of a coal mine in Kentucky; that plaintiff was engaged in the wholesale coal business in Chicago and on January 31, 1925, the parties entered into a written contract whereby the Coal Mining Company appointed plaintiff its sole and exclusive agent for the sale of the entire output of the mine. Plaintiff agreed to use its best efforts to sell all of the coal mined at the best price obtainable and the Coal Mining Company agreed to operate the mine so as to produce the maxim amount of coal under proper mining practices, and to ship it in conformity with orders given it by the plaintiff. Plaintiff further agreed to give the Coal Mining Company shipping directions for not less than 150,000 tons of coal per year during the life of the contract, which was from January 31, 1925, until the 31st of March, 1930. There are other provisions in the contract which need not be adverted to here.

Apparently the Coal Mining Company was in need of funds, and on the date of the contract it made and some time thereafter delivered the document which is the basis of this suit, to wit:

"Chicago, Illinois,
January 31, 1925.

$15,000.00

On or before fifteen (15) months after date, for value received, the undersigned Kentucky River Coal Mining Co. promise to pay to the order of Atlas Coal & Coke Co., the sum of Fifteen Thousand and no/100 Dollars, at their office, Old Colony Building, Chicago, Illinois, with interest at the rate of six per cent per annum, after date hereof, as per contract of even date herewith by and between the parties hereto.

KENTUCKY RIVER COAL MINING Co.,
By R. C. Whitsett, President.

No. ............

ATTEST:

Roland A. Plate, Secretary."

The three defendants wrote their names on the back of the note.

On the argument at the bar the original document was exhibited, and from it it appears that the document was an ordinary printed blank form of a promissory note, and immediately following the last of the printed matter these words were typewritten: "After date hereof, as per contract of even date herewith by and between the parties hereto."

The evidence further shows that about February 7 plaintiff paid the $15,000 mentioned in the note to the Coal Mining Company and the president of plaintiff testified that at that time the note was delivered to him; that it then bore the indorsement of the three defendants and that it had been retained by plaintiff continuously from that time. The three defendants gave testimony to the effect that plaintiff paid the

Coal Mining Company the $15,000 about February 7, 1925, and that it was about the latter part of that month that the note was brought to them, when they indorsed it, and that it was afterwards returned to plaintiff.

The court instructed the jury that if they found from the evidence that the three defendants did not sign their names on the back of the instrument until after it had been delivered to the plaintiff by the Coal Mining Company and until after the $15,000, evidenced by the note, had been paid to the Coal Mining Company, they should return a verdict for the defendants. They were also instructed that if the defendants had indorsed the note prior to the time it was delivered to plaintiff, or prior to the time when the $15,000 was paid by plaintiff to the Coal Mining Company, then they should find the issues for the plaintiff.

The jury by their verdict in favor of plaintiff found in effect that the indorsements had been placed upon the note prior to the payment of the $15,000 and prior to the delivery of the note to the plaintiff, which finding the defendants contend is against the manifest weight of the evidence. We have carefully considered all the evidence in the record on this point and are of the opinion that we would not be warranted in disturbing the finding of the jury on the ground that it was against the manifest weight of the evidence. An analysis of the evidence on this point we think unnecessary.

The defendants contend that the note in suit is not a negotiable instrument "because it does not contain an unconditional promise to pay a sum certain in money; the promise in the note is to pay 'as per contract of even date by and between the parties hereto.' "

Section 1 of the Negotiable Instrument Law of 1907, Cahill's 1927 Statute, page 1734, provides in part that:

"An instrument payable in money, to be negotiated, must conform to the following requirements:

"1. It must be in writing and signed by the maker or drawer.

"2. Must contain an unconditional promise or order to pay a sum certain in money.

"3. Must be payable on demand or at a fixed or determinable future time.

"4. Must be payable to the order of a specified person or to bearer."

And section 3 of the same Act [page 1735] provides that: "An unqualified order or promise to pay is unconditional within the meaning of this Act, though coupled with:

"1. An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or

"2. A statement of the transaction which gives rise to the instrument.

"But an order or promise to pay out of a particular fund is not unconditional."

It is conceded by both parties that whether the instrument in suit is negotiable within the meaning of our statute must be determined from the face of the instrument alone. And the defendants contend that it is not negotiable because the promise to pay is conditional in that the note states upon its face that it is made and delivered "as per contract of even date herewith by and between the parties hereto"; that these words qualify the promise to pay and are not a mere statement of the transaction giving rise to the instrument.

On this question numerous authorities are cited and discussed by counsel for both parties, but we think it would serve no useful purpose to analyze or discuss them to any great extent because the wording of the documents in suit in the several cases is different. The

tendency of the courts is to construe commercial instruments, having on them a memorandum as to the dealings of the parties, as negotiable if they in other respects have all the characteristics of negotiability. 34 Yale Law Journal 98, citing 163 N. Y. Supp. 719. And continuing the author of the article says: "Greater circulation of commercial paper tends to lower interest rates and stability of circulation makes for efficiency in handling business affairs. If negotiability is a socially desirable end, an instrument should be held negotiable where two interpretations are equally possible." And again, after quoting section 3 of the Negotiable Instrument Law, it is said: "Some courts, by strict construction . . . interpret the phrase 'as per' in the sense of 'subject to' or 'according to,' and hold the paper non-negotiable by applying the latter section. (Sec. 3.) Other courts apply sec. 3 of the act and hold such instruments negotiable." (Citing 218 Mass. 30; 282 Fed. 920.)

And in 19 Illinois Law Review, page 289, it is said: "A fairly common situation is that arising from the use of the phrase 'as per' specified contract. The principal case (*Calvert Drug Co.*, Md., 124 Atl. 891) holds that the insertion of that phrase by the drawee conditions his acceptance. A contrary view is taken by a case on all-fours: (*International Finance Corp. v. Northwestern Drug Co.* (1922), 282 Fed. 920.) But the greater weight of authority is that the use of the phrase 'as per' designated contract by maker or drawer in the body of the instrument, following words denoting an unconditional promise or order to pay, does not render that engagement conditional." (Citing 163 N. Y. Supp. 719.)

In the instant case the document in suit is the ordinary printed blank form of a promissory note, and following the printed matter the words, "as per contract," etc., are added. We think it obvious that it was the understanding of all the parties that they were

executing an ordinary promissory note and were merely adding to it a statement of the transaction which gave rise to the instrument, as mentioned in section 3 of the Negotiable Instrument Law, above quoted. (See *Doyle v. Considine,* 195 Ill. App. 311.) We therefore hold that the note in suit is a negotiable instrument within the meaning of our statute.

The evidence further shows that from the date of the contract, January 31, 1925, until March 9, 1926, plaintiff gave orders for coal to the Coal Mining Company, and that during that time 1,895 carloads of coal were shipped on certain orders received and on other orders the Mining Company shipped 94,082.49 tons of coal; that they also shipped some coal to Cleveland, Ohio, on plaintiff's orders.

The contract entered into between the plaintiff and the Coal Mining Company provided that plaintiff might retain $500 a month out of the moneys due and owing by it to the Coal Mining Company and apply the same towards the payment of the note; and the evidence shows that plaintiff retained in this manner $10,481.40, payments of which are indorsed on the note, leaving the balance for which the present suit was brought.

On March 9, 1926, a receiver of the Coal Mining Company was appointed in a bankruptcy proceeding brought against it; shortly thereafter the United States District Court for the Eastern District of Kentucky, in which the bankruptcy proceedings were pending, entered an order authorizing the receiver not to assume the carrying out of the contract of January 31, 1925. Each of the three defendants was a stockholder and director of the Coal Mining Company and Whitsett was the president. It further appeared that the plaintiff withheld $2,054.44 due and owing from it to the Coal Mining Company, which amount was claimed by a customer of plaintiff as damages on account of

the Coal Mining Company's failure to ship coal to the customer. The customer claimed damages from the plaintiff and plaintiff paid this sum to its customer in settlement of the claim.

The written contract of January 31, 1925, is in evidence. On the trial the defendants sought to recoup the damages the Coal Mining Company had sustained by reason of the fact that the Coal Mining Company had lost money and was forced into bankruptcy through the failure of the plaintiff to order coal at the times and in the quantities the contract provided. By the offer the defendants sought to prove that "by reason of the plaintiff's failure to furnish orders during the first year as per the terms of the contract, the Coal Mining Company was unable to operate its mine on many days, and that by reason of said failure the Coal Mining Company sustained losses in excess of the unpaid amount of the note in question." And defendants further offer to prove that "up to March 9, 1926, the Kentucky River Coal Mining Company filled all orders placed with it by the plaintiff, and that all coal was shipped in accordance with the contract and of the quality specified in such orders and in the contract." Plaintiff's objection to this offer was sustained.

The objection of plaintiff to this offered evidence was that defendants failed to offer to prove that the Coal Mining Company was ready, willing and able to perform the written contract on its part, and the argument is that since the evidence showed that the Coal Mining Company went into bankruptcy on March 9, 1926, and since the receiver was shortly thereafter relieved from the contract, this demonstrated that the Coal Mining Company was not in a position to carry out the contract, but that on the contrary it was in default; and that under the law, even if plaintiff was in default in the performance of the contract, the defendants were not entitled to recoup the damages sus-

tained by reason of such default, because the Coal Mining Company was also in default; and in support of this the case of *Harber Bros. Co. v. Moffat Cycle Co.,* 151 Ill. 84, and other authorities are cited.

Since the note in suit had not been negotiated, the defendants, the indorsers, could interpose any defense that would have been available to the maker of the note, the Coal Mining Company; and we are clearly of the opinion that if the Coal Mining Company were sued by the plaintiff on the note and the proof showed that while the contract was being carried out by both parties, the defendant, the maker of the note, through the default of the plaintiff was forced into bankruptcy and damaged in an amount greater than the amount claimed as a balance due on the note, that the Coal Company could recoup the damages it had sustained by reason of such default. *Waterman v. Clark,* 76 Ill. 428; Puterbaugh's Common Law Pleading and Practice (10th Ed.), sec. 191. In the *Waterman* case, suit was brought by the payee of a promissory note against the maker and surety. The defendants interposed a plea seeking to recoup damages. It is set up that Waterman, the payee of the note, owned and was running a distillery and took certain cattle and hogs belonging to the defendant, Clark, the maker of the note, to feed and fatten at defendant's distillery at a certain price per head; that after the plaintiff had had the stock for three months Clark, the owner, finding they were not being fattened but were being greatly injured or damaged on account of improper food, thereafter demanded the return of the stock, which plaintiff refused unless defendant would execute the note, which was done; that there was no consideration for the note but to prevent further injury and damage to the stock the note was executed, and damages were claimed on account of the improper feeding of the stock in the sum of $300, which it was sought to recoup against the note.

The Supreme Court held this plea good. The court said (p. 430) that the objection to the plea was: "That the matter, in respect to which the damages are sought to be recouped, does not arise between the parties to the record, it arising between the plaintiff and one of the defendants, not both—that the same rule should apply to recoupment as to set-off. The objection would be valid if set-off and recoupment were governed by the same rules. But such is not the case; they depend on quite different principles. In the case of recoupment, a claim originating in contract may be set up against one founded in tort, and *vice versa*. *Streeter v. Streeter*, 43 Ill. 197. The cross demand must proceed from the same subject matter as the plaintiff's right of action, and the defendant cannot, as in the case of a set-off, recover any excess in his favor. He uses his claim in mitigation of damages, by way of reducing the amount of the recovery. It is a defense here against the note, to be availed of as any other defense against the note itself."

In Puterbaugh's Common Law Pleading and Practice (10th Ed.), in the section cited, it is said: "Recoupment is the act of abating a part of a claim on which one is sued, by means of a legal or equitable right, resulting from a counter claim arising out of the same transaction." In the instant case, although both parties were in default in carrying out the contract (the default of the defendant as pointed out by plaintiff being that the defendant had gone into bankruptcy and the contract abrogated by the bankruptcy court), we think plaintiff ought not in equity recover the balance due on the note without deduction. The default (the bankruptcy) of the defendant resulted from plaintiff's default, as the offered evidence tended to show. The defendants' evidence should have been admitted.

We think there is no holding in the *Harber Brothers Co.* case (151 Ill. 84) that would prevent the defend-

ants in the instant case from recouping their damages. In that case the plaintiff was seeking to recover the damages for the breach of an express contract and the court held in such case plaintiff must prove that it was not in default. The court there said (pp. 92, 93): "Appellant (plaintiff) here is not seeking damages as on an implied agreement, nor by way of recoupment, but by action on the express contract; and we understand it to be an elementary and inflexible rule in such case, that it must aver and prove it is not itself in default as to the agreement for the breach of which by appellee it brings the suit." In that case the defendant filed a set-off, claiming a balance due for bicycles sold and delivered to plaintiff for $1,647.96. The evidence showed that plaintiff was required to expend $588.70 in repairing the bicycles, and this was allowed against the set-off. In that case there was a contract between the parties whereby the plaintiff bought and the defendant sold a certain number of bicycles to be delivered at specified times. The plaintiff was in default in the payment of some of the machines and the defendant was in default in shipping the machines. Plaintiff brought suit with the result as above stated. The court there further said (p. 96): "The question here distinctly presented as the controlling one, is whether a vendee who has accepted goods delivered under an express contract, but not at the time or in the quantity required by it, with knowledge of the default of the vendor in those respects, but has himself failed, without legal excuse, to pay for them according to it, can maintain an action on the contract for such a default of the vendor. We think the general rule, everywhere recognized, is against it, and has been specifically so applied in analogous cases in Illinois. *Pennsylvania Coal Co. v. Ryan,* 107 Ill. 226; *Bradley v. King,* 44 id. 339; *Stewart v. Many,* 7 Ill. App. 517." We think it apparent that the *Harber Brothers* case is not in point.

The defendants further offered to prove that the $2,054.44 withheld by plaintiff, as above mentioned, amounted to duress and that they should be given credit for this sum. It was stipulated that the Coal Mining Company shipped only about 8,000 tons of an order for 15,000 tons of coal which plaintiff had sold to the Cleveland and Western Coal Company, and that by reason of plaintiff's failure, the Cleveland Company claimed damages of approximately 30 cents per ton on account of the undelivered coal. This amounted to $2,054.44 and it seems that plaintiff paid this sum to the Cleveland Company in settlement of the claimed damages. Before this was done, plaintiff refused to pay the Coal Mining Company for coal delivered unless plaintiff was authorized to withhold this sum and pay it to the Cleveland concern and the defendants contend that the Coal Mining Company was forced to acquiesce in the withholding of the money and that this amounted to duress because it had to have the money for the coal to meet its payroll.

It further appears that this sum was not withheld at once but was deducted from monthly instalments paid by plaintiff to the Coal Mining Company for the coal, and there is no contention that the Coal Mining Company afterwards made any complaint because of the deduction, nor is there any contention that plaintiff made any profit out of any such deduction, but on the contrary it seems that it paid this sum to the Cleveland Company. We think there was no duress in these circumstances.

For the error in failing to permit the defendants to offer evidence in recoupment as stated, the judgment of the superior court of Cook county is reversed and the cause is remanded.

*Reversed and remanded.*

McSURELY, P. J., and MATCHETT, J., concur.