Sturgis National Bank, Appellant, v. Harris Trust & Savings Bank, Appellee.

**Gen. No. 35,821.**

Opinion filed April 25, 1932.

Fisher, Boyden, Bell, Boyd & Marshall, for appellant.

CHAPMAN & CUTLER, for appellee; CHARLES M. THOMSON, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

This case involves the title to five First Mortgage Gold Bonds of the Central Mexico Light & Power Company of the par value of $1,000 each. Which of the parties to this suit has title depends upon whether or not the bonds are negotiable. They were stolen from the plaintiff, passed through several hands and were eventually purchased by a Mr. Fisher in good faith, who instructed the New York brokers through whom he bought them to send them to the defendant in Chicago, which was done. Plaintiff, having located the bonds, demanded them from defendant, the demand was refused and this suit in trover followed. Defendant does not claim any property in the bonds but is holding them as custodian for the owner. If the bonds are negotiable defendant may retain them. The trial court so held and plaintiff appeals.

The only question presented is, Did the bonds contain an unconditional promise to pay a sum certain in money and hence are negotiable? The Uniform Negotiable Instruments Act, ch. 98, par. 21, Illinois (Cahill), provides that "Sec. 1—An instrument payable in money, to be negotiated, must conform to the following requirements: 1. . . . 2. Must contain an unconditional promise or order to pay a sum certain in money." Whether the promise to pay is unconditional must be determined from the face of the writing itself. *Equitable Trust Co. of New York v. Harger,* 258 Ill. 615, and followed in numerous cases cited in *Pflueger v. Broadway Trust & Savings Bank,* 265 Ill. App. 569. These cases also hold that if in the bond anything appears requiring reference to another document to determine whether in fact the uncondi-

tional promise to pay a sum certain at a future date is modified or subject to some contingency, then the promise is no longer unconditional. The bond may refer to the transaction giving rise to the instrument, or it may refer to a trust deed or mortgage given as security without impairing its negotiability. It is not difficult to determine the law. The difficulty arises in applying the law to a particular case.

Turning then to the bonds before us to ascertain what words they contain which it is claimed modify the promise to pay, thus destroying their negotiable character, we find that it is provided that, for value received, the Central Mexico Light & Power Company promises to pay to bearer on a fixed day $1,000, at a specified place, with interest at six per cent per annum. This first paragraph is rather long, and it is not contended that in itself it is otherwise than an unconditional promise to pay. The words said to create a contingency or condition with reference to payment are in the next paragraph, the first part of which reads:

"This bond is one of a series of bonds for the aggregate principal sum of two million five hundred thousand dollars ($2,500,000) . . . and is entitled to the benefits and subject to the provisions of a mortgage or deed of trust, dated January 3, 1910, made by the obligor company to City Trust Company, as Trustee." The particular words said to impair the promise to pay are: "This bond . . . is entitled to the benefits and subject to the provisions of a mortgage or deed of trust." Farther on in the bond is a provision that no stockholder, officer or director of the obligor company shall be liable and they are released from such liability "by the terms of the mortgage or deed of trust, subject to which this bond is issued."

This court has had occasion in a number of cases to consider the effect of somewhat similar language. The

latest is *Pflueger v. Broadway Trust & Savings Bank,*
265 Ill. App. 569, opinion filed October 19, 1931, the
opinion in which contains an exhaustive investigation
and study of this subject, with many citations of
decided cases. In that case the debentures contained
the provision that they were issued "under a certain
trust agreement, . . . to which trust agreement
reference is hereby made for a statement of the terms
under which the said debentures are issued." We
held these words did not impair the negotiability of
the debenture bonds. It should be noted that the
words "under which" in those debentures, and "sub-
ject to" in the bonds under consideration, are syn-
onymously used.

In *Balch v. English,* 261 Ill. App. 29, after the un-
conditional promise to pay, the bonds contained a pro-
vision that the entire principal sum might become due
and payable "upon the terms and under the conditions
prescribed in the trust deed," and that the trust deed
and bonds are parts of the same contract. In *Weber
v. Keith Railway Equipment Co.,* 248 Ill. App. 258,
the certificate bonds referred to a contract of lease
"under which said certificates are issued." In both
of these cases it was held that unless such words make
payment dependent or conditional upon some instru-
ment to which they refer, they will not destroy the
negotiable character of the note. *Biegler v. Mer-
chants' Loan & Trust Co.,* 164 Ill. 197; *National Bond
& Investment Co. v. Lanners,* 253 Ill. App. 262; and
*Atlas Coal & Coke Co. v. Kentucky River Coal Min.
Co.,* 253 Ill. App. 475.

Other jurisdictions have almost universally held that
courts should not modify an unconditional promise to
pay by forced construction of the language of the in-
strument. *Utah Lake Irr. Co. v. Allen,* 64 Utah 511;
*Paepcke v. Paine,* 253 Mich. 636; *Bank of California
v. National City Co.,* 138 Wash. 517; *Bank of Califor-*

*nia v. National City Co.*, 141 Wash. 243. In *Enoch v. Brandon*, 249 N. Y. 263, the court had under consideration the effect of the words in the bonds, that they were "all equally secured by and entitled to the benefits and subject to the provisions" of a trust mortgage. It was claimed this impaired the promise to pay and made the bonds non-negotiable. It will be noted that these are virtually the same words as are in the instruments before us. It was held that these did not modify the promise to pay; that they have to do with the trust mortgage given as security and refer to the rights conferred by it upon the bondholders and limit and explain those rights.

Counsel for plaintiff cite the recent case of *People v. Gould*, 347 Ill. 298, as sustaining its position. In that case the note, after reciting the promise of the obligor to pay $30 one year after date, says that it was given for interest due on a "principal trust deed note hereto attached and numbered 146–1. Payable according to the tenor of said principal note." The alleged principal note was not set out in the indictment. These words were construed to be a direction as to the manner in which the note was to be paid; that the principal note "may have been an unconditional promise to pay or may not have been such a promise to pay." For this reason the instrument was held to be non-negotiable. That was a criminal case, in which stricter rules of construction obtain than in civil cases. By the express language of the instrument, payment was conditioned upon the terms of another instrument. Other cases cited by the plaintiff can be readily distinguished from the instant one. A typical case is *Chicago Trust & Savings Bank v. Chicago Title & Trust Co.*, 190 Ill. 404. There the note held non-negotiable was, by its promise, payable after the completion of certain work, and it was held that this was "a contingency which may never happen."

In the bonds before us the promise to pay is explicit and unconditional. The second part of the bond, which contains the questioned words, refers to the security. No purchaser examining this would understand that the obligor was qualifying its promise to pay. It would never occur to him that anything contained in the trust deed or mortgage might make it impossible to collect the amount due him. He would interpret the statement that the bonds were "entitled to the benefits and subject to the provisions of a mortgage or deed of trust," as meaning that a foreclosure or other relief might be had thereon, subject to the provisions of such mortgage. As was aptly said in *Enoch v. Brandon, supra,* "such provision would mean to a purchaser that only by turning to the mortgage would he discover the precise nature of the lien he would obtain. He would see that the bonds to be issued were not only upon the credit of the corporation, but upon the faith of some collateral mortgage. To it he must go if further knowledge as to this security is desired."

Such bonds should be construed most favorably to the purchasing public. Words and statements contained therein should not be twisted or distorted from their obvious meaning, especially when to do so would result in loss to many innocent purchasers and in serious confusion in the commercial world.

For the reasons indicated the judgment of the circuit court is affirmed.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.