Abraham Oswianza, Appellee, v. Wengler & Mandell, Inc., Appellant.

Gen. No. 37,163.

Opinion filed January 15, 1934. Rehearing denied and supplemental opinion filed January 30, 1934.

WINSTON, STRAWN & SHAW, for appellant; THOMAS I. UNDERWOOD and DOUGLAS C. MOIR, of counsel.

WILLIAM FELDMAN, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit on four bonds secured by a trust deed, and upon trial by court had judgment for $2,090, from which defendant appeals.

The bonds contained language referring to the trust deed and the question presented is whether this language, in connection with certain limitations expressed in the trust deed, bars plaintiff from pursuing an action at law on the bonds. This language in the bonds is as follows:

"Said trust deed and this bond, as well as all the other bonds aforesaid, are to be taken and considered together as parts of one and the same contract.

"Both principal and interest bear interest after maturity thereof at the rate of seven per cent (7%) per

annum, and are payable in the manner described in the Trust Deed. . . .

"For a description of the mortgaged property and the nature and extent of the security, reference is made to said trust deed, to all of the provisions of which this bond and each coupon hereto attached are subject, with the same effect as if said trust deed were herein fully set forth."

The language of the trust deed said to bar an action at law by the holder of the bonds is as follows:

"Every holder of any of the bonds hereby secured (including pledgees) accepts the same subject to the express understanding and agreement that every right of action, whether at law or in equity, upon or under this Indenture, is vested exclusively in the Trustee, and under no circumstances shall the holder of any bond or coupon, or any number of combination of such holders, have any right to institute any action at law upon any bond or bonds or any coupon or coupons, or otherwise, or any suit or proceeding in equity or otherwise, except in case of refusal on the part of the Trustee to perform any duty imposed upon it by this Indenture after request in writing by the holder or holders of at least twenty-five per cent (25%) in amount of said bonds as aforesaid, and such refusal of the Trustee shall continue for sixty (60) days after such demand as aforesaid. No action at law or in equity shall be brought by, or on behalf of, the holder or holders of any bonds or coupons, whether or not the same be past due, except by the Trustee or by the requisite number of bondholders acting in concert under the provisions of this Section for the benefit of all bondholders. In the event that pursuant to the terms hereof holders of at least twenty-five per cent (25%) or more in amount of said bonds shall have joined in exercising the right to act in lieu of the Trustee, then none of the remaining bondholders shall

have any right to institute any legal proceedings of the same or a similar character for the same default of the Mortgagor.''

While some earlier cases hold that under similar circumstances the holder of the bond has deprived himself of any right of action at law thereon (*Boley v. Lake Street Elevated R. Co.,* 64 Ill. App. 305; *Belleville Sav. Bank v. Southern Coal & Mining Co.,* 173 Ill. App. 250), the later cases hold otherwise. In the recent case of *Sturgis Nat. Bank v. Harris Trust & Savings Bank,* 351 Ill. 465, the court quoted with approval from *Thorp v. Mindeman,* 123 Wis. 149: ''While the two instruments will be construed together wherever the question as to the nature of the actual transaction becomes material, this does not mean that the mortgage becomes incorporated into the note. . . . The holder of the note may discard the mortgage entirely and sue and recover on his note, and the fact that a mortgage had been given with the note, containing all manner of agreements relating simply to the preservation of the security, would cut no figure.'' In this case the Supreme Court affirmed the Appellate Court, 266 Ill. App. 199, where we said: ''Such bonds should be construed most favorably to the purchasing public. Words and statements contained therein should not be twisted or distorted from their obvious meaning, especially when to do so would result in loss to many innocent purchasers and in serious confusion in the commercial world.'' Other cases to the same effect are *Pflueger v. Broadway Trust & Savings Bank,* 351 Ill. 170; *Romberg v. Interstate Independent Telephone & Telegraph Co.,* 200 Ill. App. 509; *Schatzkis v. Rosenwald & Weil,* 267 Ill. App. 169; *Balch v. English,* 261 Ill. App. 29; *Gauss v. Simon,* 268 Ill. App. 196.

We do not concede that a limitation on the right to sue is not inconsistent with the negotiability of a promissory note. But if this were true, such words of limitation are absent from the instant note. The

words claimed to be a limitation on the right to sue are those referring to the trust deed, and, as was said in *Enoch v. Brandon,* 249 N. Y. 263, such words mean that only by turning to the mortgage would the holder discover the precise nature of the lien. "He would see that the bonds to be issued were not only upon the credit of the corporation, but upon the faith of some collateral mortgage. To it he must go if further knowledge as to this security is desired."

Our conclusion is controlled by the decisions in the above cited cases, and the judgment is therefore affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.

SUPPLEMENTAL OPINION UPON PETITION FOR REHEARING.

The attorneys for the defendant have filed a petition earnestly requesting a rehearing, which prompts some further observations.

What is the effect on negotiability of a provision in the instrument limiting the right of the holder to sue in his own name? In *Pflueger v. Broadway Trust & Savings Bank,* 265 Ill. App. 569–581, is presented the view that such a provision is so contrary and repugnant to the essence of the instrument that it is void, citing a large number of supporting cases.

There are also a considerable number of cases which tend to hold that any provision which limits the right of the holder to sue in his own name destroys negotiability. We recognize that *Paepcke v. Paine,* 253 Mich. 636, and *Pflueger v. Broadway Trust & Savings Bank,* 351 Ill. 170, apparently hold that such a provision cannot affect the negotiability of the instrument since, as stated in the latter case, such a provision relates only to the remedy after default and when the instruments have ceased in the full commercial sense

to be negotiable. We suggest that, as it is obvious no suit could be brought by a holder before maturity, and, if the so-called "No-Action Clause" is operative only after default, the holder can never bring a suit at law, although the Negotiable Instruments Act provides, as an incident of negotiability, that "The holder of a negotiable instrument may sue thereon in his own name." Ch. 98, par. 71, sec. 51, Illinois Statutes (Cahill) 1933.

There is a very impressive body of authority indicating that the right of a holder to sue is an essential of negotiability. In *Shaw v. Railroad Co.,* 101 U. S. 557, the court, answering the question as to what is negotiability, says: "It is a mercantile business transaction, and the capability of being thus transferred, so as to give to the indorsee a right to sue on the contract in his own name, is what constitutes negotiability." To the same effect are *Moody v. Morris-Roberts Co.,* 38 Idaho 414; *Cella v. Brown,* 144 Fed. 742, and cases cited in 8 C. J. 51, sec. 51, and in 3 R. C. L., 837, sec. 11. This precise question was considered in *St. Louis-Carterville Coal Co. v. Southern Coal & Mining Co.,* 194 Mo. App. 598, where the court, holding the coupon notes non-negotiable, said:

"The provisions of the bond calling into it those of the mortgage in connection therewith limits the right to collect the amount stipulated on the face of the coupon at the time therein stated in accordance with the conditions prescribed in the mortgage. This being true, it is clear all of the elements pertaining to negotiable instruments purchased in good faith before maturity, are not present. Obviously such a coupon is not to be treated in the law of negotiable instruments as a 'courier without luggage.' "

In 29 Columbia Law Review, 365, it is said:

". . . A more prevalent view is to consider that the reference makes the mortgage provisions a part

of the bond, but if the mortgage . . . requires that no bondholder can sue on the bond until the trustee has had a reasonable time to sue on behalf of all the bondholders, or requires that a majority of bondholders must join in a suit for default in payment of the bond, the courts declare the bond to be non-negotiable. . . .'' It has been the rule from ancient times that a holder of a negotiable instrument could sue thereon in his own name. See *Nutford v. Wolcot,* 1 Lord Raymond, 574, decided in 1699.

If we assume the instant bonds are negotiable, and both parties to this suit say that they are, we must, if possible, construe the words in the bonds so they will be consistent with the provision of the statute above quoted. It has been the custom for many years for negotiable instruments of this kind to refer to the security. One who loaned money or purchased such paper did so depending upon the reliability of the obligor and also upon the security. A purchaser would not surmise that words referring to the trust deed in any way limited his statutory right to sue in his own name. Latterly there have been strenuous efforts to have such words as ''subject to the provisions'' of the trust deed construed to mean that the provisions of the trust deed controlled and limited the right of the holder to sue. *Sturgis Nat. Bank v. Harris Trust & Savings Bank,* 351 Ill. 465, held against this. The words in the bonds in the instant case are, that principal and interest ''are payable in the manner described in the trust deed.'' But these words are no more definite than the questioned words in the *Sturgis* case.

Considered technically, the provision in the present trust deed does not relate to the ''manner'' in which the bonds ''are payable,'' but does attempt to control the procedure upon default in payment.

It should not be forgotten that a secured negotiable instrument gives a negotiable instrument, plus security; reference to the security is reference to the added rights. We held that the promise to pay was unconditional and that the provision in question refers to the security and the manner of proceeding against this security.

We see no reason to change our former opinion, and the petition for rehearing is therefore denied.

*Petition for rehearing denied.*

MATCHETT, P. J., and O'CONNOR, J., concur.