CITY BANK & TRUST CO. *v.* ATWOOD.

1. BILLS AND NOTES—CONTRACTS—FOREIGN CONTRACTS—VALIDITY —WHAT LAW GOVERNS.

    The laws of a foreign State govern the rights of the parties to a note executed in such State by a resident of such State and payable to a bank in such State.

2. HUSBAND AND WIFE—CONTRACTS—STATUTES—CONTRACT OF WIFE —SURETY FOR HUSBAND.

    Under the Code of Alabama, § 4492, providing that a "wife has full legal capacity to contract as if she were *sole,* except as otherwise provided by law," and § 4494, relating to her right to alienate or mortgage her real or personal property under certain conditions, and § 4497, providing that the "husband and wife may contract with each other, but all contracts into which they enter are subject to the rules of law as to contracts by and between persons standing in confidential relations; but his wife shall not, directly or indirectly, become the surety of her husband," a married woman can make all contracts, agreements, and conveyances in regard to her separate estate, "except as otherwise provided by law," and the only prohibition upon her is that she cannot directly or indirectly become the surety for her husband.[1]

3. SAME.

    Under the Alabama laws a surety is one who contracts to answer for a debt, default or miscarriage of another, assuming an obligation accessorial to that of the principal debtor.

4. BILLS AND NOTES—CONTRACTS—FOREIGN CONTRACTS—PRINCIPAL AND SURETY.

    In an action on a note made in Alabama, evidence examined and *held,* insufficient to establish that defendant was a surety on the note for her husband.

Error to Montcalm; Davis, J. Submitted April 9, 1917. (Docket No. 96.) Decided July 26, 1917.

[1]On conflict of laws as to capacity of married woman to contract, see notes in 57 L. R. A. 513; 26 L. R. A. (N. S.) 764. 774; L. R. A. 1916A, 1054.

Assumpsit by the City Bank & Trust Company against Jennie Atwood upon a promissory note. Judgment for defendant. Plaintiff brings error. Reversed.

*John W. Dasef* and *E. J. Bowman,* for appellant.

*N. O. Griswold,* for appellee.

Steere, J. Plaintiff brought this action in the circuit court of Montcalm county upon a promissory note given by defendant to it, dated at Mobile, Ala., April 20, 1907, payable on demand at plaintiff's bank in Mobile. The note itself is in customary form, followed by a supplemental provision pledging as collateral to it 600 shares of the Mann Lumber Company, a corporation. The declaration is upon the common counts in assumpsit with a copy of the note made a part of the declaration.

Defendant pleaded the general issue with special notice of the defense that she was a married woman and the note was given without consideration to her, at the request of her husband, not for her benefit, and the proceeds were not her property.

The case was tried before the court without a jury. Findings were made and filed by the court upon request of counsel. The portions material to an understanding of the issues involved and questions raised here are as follows:

"Plaintiff is doing a banking business in the city of Mobile, in the State of Alabama, and is a resident of that State. The defendant is the wife of Guy W. Atwood, who resided in the city of Mobile and State of Alabama during the greater part of the years of 1906 and 1907. Guy W. Atwood at the time was secretary and treasurer and manager of the Mann Lumber Company, which company was a corporation organized under the laws of the State of Michigan and doing business in the State of Alabama. On or about the 1st day of June, 1906, the said Mann Lumber Company was indebted to the plaintiff for borrowed money to

the amount of $21,995.94 for which the said plaintiff held its obligations. The said Mann Lumber Company had also purchased timber upon contracts on which payments were then maturing, and it had not money to meet such payments on said timber contracts, and through the said Guy W. Atwood the said Mann Lumber Company applied to the plaintiff for a further loan of $3,000.

"The plaintiff, through its president, stated to the Mann Lumber Company, through its secretary and treasurer, that the Mann Lumber Company had borrowed to its limit, and that the plaintiff could not lend any more money to the Mann Lumber Company. The plaintiff then suggested to the secretary and treasurer of the Mann Lumber Company and the husband of the defendant that it had money to loan, and that if the wife of the said Guy W. Atwood would make a note for $3,000 and secure it with stock of the Mann Lumber Company and have the avails of the note or notes credited to the account of the defendant with the plaintiff, and make her check to the said Guy W. Atwood or Mann Lumber Company for the avails of it, so that the transaction would not appear to be for the benefit of the said Guy W. Atwood or the Mann Lumber Company, that the plaintiff would then make the loan.

"Thereupon, about the 1st day of June, 1906, the defendant and her husband, Guy W. Atwood, went to the lobby of the bank office of the plaintiff, and there the defendant, at the request of her husband, signed three notes of $1,000 each, and gave them to her husband, who took them, and issued stock of the Mann Lumber Company to Jennie Atwood and deposited the stock as collateral for the security of said notes with the plaintiff, who thereupon passed the amount of $3,000 to the credit of the said Jennie Atwood, and the said Jennie Atwood also at the same time she signed said notes signed a check for $3,000 in favor of the said Guy W. Atwood, for that amount, which check the said Guy W. Atwood indorsed over to the Mann Lumber Company and used the avails in its business: The defendant had no part of the avails of said notes for her individual use or for the benefit of her estate, and was not to have any part of the avails of said notes for

the use and benefit of her estate, which fact was well known to the plaintiff at the time of making said loan.

"Said notes were renewed from time to time and payments made thereon, until on April 20, 1907, there remained a balance due upon said notes of $1,400, the defendant signing from time to time renewal notes, and on April 20, 1907, at the request of the said Guy W. Atwood, she signed the note in question in this suit, but the defendant never at any time received any consideration therefor for her own use or for the benefit of her estate. The payments that were made from time to time by which said original indebtedness was reduced were made by checks of the Mann Lumber Company and received by the plaintiff to apply upon said obligation. The defendant never made any payments whatever upon said notes.

"The note in suit was payable on demand, and interest was paid thereon up to June 19, 1907. By its terms it should draw interest at the rate of 7 per cent. per annum until maturity, and the legal rate prevailing in Alabama after maturity.

"No evidence was offered of any demand ever having been made by the plaintiff upon the defendant, and no evidence was offered showing the legal rate of interest in Alabama. At the time of the commencement of this suit the plaintiff was still a resident of the city of Mobile, Ala., and the defendant was a resident of the State of Idaho.

"Copies of four sections of the statutes of Alabama, together with the certificate of the secretary of State appended thereto showing that such statutes were in force in 1906 and 1907, were offered and received in evidence without objection.

"There was no evidence offered of the value of the certificate of stock of the Mann Lumber Company held by the plaintiff as collateral to said defendant's obligation, or whether the plaintiff had or had not availed itself of its right to sell such stock or to purchase same for its own use, as it was authorized to do, under the terms of the obligation declared upon.

"I further find that the transaction took the course above outlined for the purpose of avoiding the appearance that the moneys were loaned to the Mann Lumber Company, and that in substance the loan was made

to the husband of the defendant for the use and benefit of the Mann Lumber Company, and that in substance the defendant was a surety only.

### "Conclusions of Law.

"Under the common law in force in all the States of the United States, except where changed by statute, a married woman is not liable on any obligation made for the benefit of another. The plaintiff in this case is not entitled to recover. Let judgment be entered for the defendant."

.Amendments to such findings were proposed by plaintiff and refused. Exceptions were duly taken to the findings as made, the refusal to find as requested, and conclusions of law under the undisputed facts proven, upon which it is contended a judgment should have been rendered in plaintiff's favor for the amount of the note sued upon.

Plaintiff's most serious contentions are that certain of the facts found by the court have no evidential support, and material facts shown by undisputed testimony are omitted, that the record is barren of any evidence defendant was surety for her husband, or of any personal indebtedness by him to either the Mann Lumber Company or plaintiff.

Amongst the requested facts not found and others disclosed by the undisputed evidence are the following: The three separate collateral notes of $1,000 each signed by defendant and given plaintiff on June 1, 1906, fell due respectively in three, four, and five months. The certificates of stock of the Mann Lumber Company attached as collateral to those notes were of $10 par value per share, being certificate No. 10 for 598 shares issued to defendant May 14, 1906, and certificate No. 2 for two shares, May 14, 1906. Defendant testified that she was the owner of stock in the lumber company which was deposited as collateral with the contract or paper which she signed that day,

and had been owner of the stock since the company first started some months before. The Mann Lumber Company is shown by its certificates of stock to have had on May 14, 1906, a capitalization of $100,000, and to be "incorporated under the laws of the State of Alabama." We find nothing in the record indicating that it was organized under the laws of Michigan. Plaintiff was a corporation "foreign" in Michigan, its place of organization not shown, with its principal office at Mobile, Ala. Defendant carried a modest account with plaintiff in her own name, upon which she had drawn checks, and her husband testified she was acquainted with the president of the bank in a social way. On June 1, 1906, none of the lumber company's indebtedness to plaintiff was past due, and defendant's husband was not individually indebted to it at the time these notes were given. Interrogated upon this, he testified in part:

"I had no individual liability. * * *

"Q. For what purpose was the $3,000, the avails of the Jennie Atwood note made June 1, 1916, that is, was it used to discharge any obligation which you owed to the bank of the Mann Lumber Company, or was it used to discharge any obligation which you owed to the bank?

"A. Neither one; I borrowed the money to invest in more stock in the Mann Lumber Company. * * * The check was given by Mrs. Atwood to me, and I indorsed it to the Mann Lumber Company, and the treasury stock was issued at the time for the amount of the loan, and the money did go to the benefit of the Mann Lumber Company. * * * I acted as Mrs. Atwood's agent in dealing with the bank; she had met the officers of the bank."

The dispute upon the facts lies in the testimony of E. J. Buck, president of plaintiff, and George W. Atwood, defendant's husband. Both testified by depositions, Buck to the effect that the loan was direct to defendant for the purpose, as he understood, of in-

creasing her holdings in the lumber company, which had increased its capital stock, and when she with her husband applied to the bank for the loan she brought the stock which she already owned and left it as collateral security; that it was always understood between defendant and her husband and witness that the borrowed money was used to buy stock for her in the lumber company; while Atwood testified that he first attempted to borrow money from the bank direct for the lumber company to take up timber contracts and other of its paper that had matured, and Buck stated it was not desired to increase its loans, but suggested the bank had money which it would loan on good security, and "it was suggested" (he does not state by whom) that the plan outlined in the court's findings be followed. Atwood's testimony, as taken by deposition in Idaho, at two different times, is not harmonious with itself in all particulars. He, however, testified and repeated that the money was borrowed upon his wife's note with the lumber company stock as collateral security, to buy more stock in that company; that he received from his wife a check drawn on her account in the bank, and indorsed it to the Mann Lumber Company, for which treasury stock was issued to the amount of the check (he does not state to whom), by which method the money eventually went to the Mann Lumber Company and was used in its business. He was defendant's agent, and also secretary and treasurer of the Mann Lumber Company. Upon the proposition that the money borrowed from plaintiff's bank was used to purchase more stock in the Mann Lumber Company he and Buck are in accord.

There is no direct testimony to whom the stock so purchased was actually issued. The court inferred and found that it was issued to defendant and put up as collateral. That it was issued to her is a fair

presumption, but her testimony is not in harmony with the inference that was the same stock she put up as collateral.

This is an Alabama contract. It is undisputed that all parties connected with the transaction, including the Mann Lumber Company, were then located in and residents of the State of Alabama. Their rights are to be tested by the laws of that State. The provisions of the Code of Alabama then in force are as follows:

"4492. (2526) (2346). *Wife's Power to Contract.*—The wife has full legal capacity to contract as if she were *sole;* except as otherwise provided by law.

"4494. (2528) (2348). *Power of Wife to Alienate or Mortgage her Real and Personal Property.*—The wife, if the husband be of sound mind, and has not abandoned her, or be not a nonresident of the State, or be not imprisoned under a conviction for crime for a period of two years or more, cannot alienate or mortgage her lands, or any interest therein, without the assent and concurrence of the husband, the assent and concurrence of the husband to be manifested by his joining in the alienation in the mode prescribed by law for the execution of conveyances of lands. But if the husband be *non compos mentis,* or has abandoned the wife, or is a nonresident of the State, or is imprisoned under a conviction for crime for a period of two years or more, the wife may alienate or mortgage her lands as if she were *sole.*

"4497. (2529) (2349). *Contracts Between Husband and Wife; She Cannot Become His Surety.*—The husband and wife may contract with each other, but all contracts into which they enter are subject to the rules of law as to contracts by and between persons standing in confidential relations; but the wife shall not, directly or indirectly, become the surety for the husband."

It is to be observed that under the law of that State the wife is more fully emancipated than by the Michigan statute, the object of which is limited to abolishing the common-law rule respecting the marital rights of the husband over the wife's individual

property, in relation to which she may contract (*De Vries* v. *Conklin*, 22 Mich. 255) ; but otherwise her common-law disabilities remain, and she is not liable on her individual promissory note or other obligation, even in the hands of a *bona fide* holder for value, unless it is shown to be connected with her separate property (*Johnson* v. *Sutherland*, 39 Mich. 579), while a contrary rule obtains in Alabama, as held in *Scott* v. *Taul*, 115 Ala. 529 (22 South. 447), where the wife who signed a note with her husband was held, as against a *bona fide* purchaser for value, precluded from escaping liability under the statutory defense that she signed as surety for her husband.    In that State all common-law disability is removed except as otherwise provided by statute.    The only statutory restriction material here is the provision in section 4497 of the code that, while she may contract with her husband, she cannot become *surety* for him directly or indirectly.    In *Sample* v. *Guyer*, 143 Ala. 613 (42 South. 106), referring to the statutory provisions of that State, the court said:

"Under our present married woman's law, capacity to contract is the rule, and incapacity the exception. A married woman can make all contracts, agreements, and conveyances in regard to her separate estate, 'except as otherwise provided by law,' and the only prohibition upon her is that she cannot 'directly or indirectly become the surety for the husband.'   *   *   *   She has the 'right to give her property away to her husband or anybody else, and to apply it, by her own hand or through her husband, directly to the payment of his debts' "—citing previous decisions.

In Alabama, as generally elsewhere, a surety is held to be one who contracts to answer for a debt, default, or miscarriage of another, assuming an obligation accessorial to that of the principal debtor.    *Mobile, etc., R. Co.* v. *Nicholas*, 98 Ala. 92 (12 South. 723).    The word "surety" means a copromisor to answer for and

with another, or a co-obligor with and for the principal entering into a contract with a third party at the same time jointly, or jointly and severally. *Read* v. *Cutts,* 7 Me. 186 (22 Am. Dec. 184).

Conceding that the lumber company was the actual borrower from the bank under disguise, and defendant was in truth only surety for it, she was a stockholder in that company from the beginning, financially interested in it, and, if she was so inclined, could legally become surety for it in that State. Misplaced confidence in the business ability of her husband as its manager would be no defense. She even had the legal right to borrow this money from the bank and give it to her husband to buy stock for himself, or as her agent for her. She could do anything and everything in that connection that any adult could do, except to become a surety to another for her husband. The record is barren of any evidence that her husband became legally liable as principal to the bank, or to any one else in this transaction, and his testimony is to the effect that he did not. It cannot be contended that the bank could hold the lumber company or Guy Atwood individually as principal on those notes which it accepted from defendant and credited the proceeds to her account.

Upon this record the testimony fails to support the finding that defendant was a *surety* for her husband.

The judgment is reversed, with costs, and a new trial granted.

KUHN, C. J., and STONE, OSTRANDER, MOORE, BROOKE, and FELLOWS, JJ., concurred. BIRD, J., took no part in the decision.