## Northwestern National Bank of Milwaukee, Wisconsin, Appellant, v. Madison & Kedzie State Bank, Appellee.

### Gen. No. 31,051.

1. NEGOTIABLE INSTRUMENTS—*sufficiency of evidence, in action to recover stolen bonds from the bank to which they were subsequently negotiated, to show actual knowledge of the theft on the part of such bank's authorized agent.* Evidence in an action to recover bonds stolen from the plaintiff bank, brought against the bank to which they were subsequently negotiated, held to show that prior to such negotiation the plaintiff had mailed to the defendant and to other banks written notice of the theft, that such notice came to the defendant in the regular course of mail and business, and that the clerk of the defendant authorized in that behalf had mailed to plaintiff an acknowledgment of the receipt of such notice and hence that such clerk had actual knowledge of the theft.

2. NEGOTIABLE INSTRUMENTS—*imputation to bank to which stolen bonds negotiated of prior actual knowledge of the theft on the part of its authorized agent.* Where the undisputed evidence in an action to recover bonds stolen from the plaintiff bank, brought against a bank to which they were subsequently negotiated, showed that prior to such negotiation the defendant's duly authorized clerk had actual notice of the theft, defendant was chargeable as a matter of law with such notice and knowledge, and hence of the infirmity of the title of the person negotiating them to it, notwithstanding the officers of the defendant through whom such negotiation was effected had no knowledge of the notice or of the theft.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. PHILIP J. FINNEGAN, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1926. Reversed and judgment here. Opinion filed October 5, 1926.

Northwestern Nat. Bk. v. Madison & Kedzie St. Bk., 242 Ill. App. 22.

EKERN & MEYERS and HAYES, SAWYER & SONDELL, for appellant; H. A. SAWYER and L. F. BINKLEY of counsel.

DEFREES, BUCKINGHAM & EATON, for appellee; WILFRED M. DOHERTY and CARLOS A. SPIESS, of counsel.

MR. JUSTICE BARNES delivered the opinion of the court.

Plaintiff filed its statement of claim in replevin on May 14, 1925. Later leave was given to file a statement of claim in trover. Issue was duly taken on the main averments in each, and trial was had without a jury. This appeal is from a judgment on the finding of not guilty.

The following essential facts are not in dispute:

On December 8, 1924, robbers entered plaintiff's bank and stole therefrom, among other securities, four bonds for $1,000 each, issued by the Commercial Utilities Company, a corporation, and five bonds or gold notes for $1,000 each, issued by the Toledo Traction, Power & Light Company, a corporation, all bearing 6 per cent interest, and all of which came into the possession of defendant on May 9, 1925, as collateral to a loan, and were still in its possession at the time of the trial.

After the robbery plaintiff mailed to banks and bond and brokerage houses over 9,000 printed notices of the robbery, giving therein an itemized list of securities lost through it, including a description identifying said bonds by their serial numbers and otherwise. Each envelope containing the notice also contained an addressed, stamped envelope for return to plaintiff, a printed form of letter addressed to plaintiff, acknowledging the receipt of the list, and closing with the words, "Very truly yours." One such envelope with such contents was duly mailed to defendant, and the inclosed addressed envelope bearing the postmark January 5, 1925, was returned to plaintiff the next

24 APPELLATE COURTS OF ILLINOIS.

Northwestern Nat. Bk. v. Madison & Kedzie St. Bk., 242 Ill. App. 22.

day through the mail, inclosing the printed letter or receipt of notice, which bore the words "Madison & Kedzie State Bank, Chicago, Illinois," placed thereon with a red rubber stamp immediately following the words, "Very truly yours." Such a rubber stamp was in use by defendant, and it was the custom of the clerk or employee to whom was assigned the duty of opening and distributing its mail, to use such a rubber stamp on receipts and other papers so received. It was also his custom on receipt of lists of stolen securities or bonds to deliver the lists to the assistant cashier, Schroeder, who in turn placed them in the note teller's cage for reference by various officers of the bank.

The trial was had in December, 1925. The clerk could not then remember receiving such a list but testified that he might have received it and so stamped the receipt, and would not testify that he did not. Schroeder testified that the first time he saw the list was at another banking house May 11, 1925, two days after the bonds and notes came into the possession of the bank as collateral to a loan it made to an impostor who had previously opened an account with the bank. The negotiation for the loan was had with defendant's assistant cashier, Gorman, who submitted the application on such collateral to said Schroeder and Mammoser, vice president and cashier of the bank, all of whom denied having received or seen any notice of the theft before receiving said bonds and notes.

It is unnecessary to go into the details of the transactions between the bank and the impostor. Their only materiality is the bearing they have on defendant's good faith in taking the bonds. While the proof may indicate negligence or lack of business precaution in such transactions, we cannot say the facts with regard thereto are such as impute bad faith to defendant.

The main grounds urged for reversal are (1) that the bonds are not negotiable instruments, and (2) if they were, that defendant took them with notice of defect in the title of the person negotiating them, and, therefore, was not a holder in due course under section 52 of the Negotiable Instruments Law [Cahill's St. ch. 98, ¶ 72]. If the latter contention is correct there is no necessity of considering the former, with which, however, we are not disposed to agree.

Whether the bonds, regarded as negotiable instruments, were taken with notice of defect in the title of the person negotiating them depends on whether defendant had actual knowledge that the bonds were stolen property when it received them. Section 56 of the Negotiable Instruments Act [Cahill's St. ch. 98, ¶ 76] provides: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The real question, as we conceive it, is whether on the undisputed fact that defendant received said notice in the manner aforesaid it is chargeable with actual knowledge of the theft when it received the bonds.

On this point our attention is directed by appellee to the case of *Lord v. Wilkinson,* 56 Barb. (N. Y.) 593. In that case the court held that where a banker received stolen notes after having been notified of the theft, notice was not conclusive of the question of good faith; that forgetting or omitting to look at the notice at the time of the purchase is not a question of *mala fides,* but is evidence of negligence, and that the question of good faith is for the jury, and that knowledge of the robbery at the time of the purchase was essential to bad faith. Other authorities are there referred

26      Appellate Courts of Illinois.

Northwestern Nat. Bk. v. Madison & Kedzie St. Bk., 242 Ill. App. 22.

to supporting that conclusion, all of which were decided prior to the adoption of the Negotiable Instruments Law as now codified for uniformity. While, as above stated, we do not think, aside from the fact defendant received such notice, that the facts were such as to impute to defendant bad faith, which would be a question of fact, yet we think upon the undisputed fact of its receiving such notice it was chargeable as a matter of law with actual knowledge that the bonds were stolen and, therefore, of defect in the title of the person negotiating them.

Being a corporation, defendant necessarily acted through its agents. Its knowledge must, therefore, be such as necessarily comes to one of its agents acting in the regular course of his duties. Upon the admitted state of facts, as above recited, with no evidence tending to rebut them, it must be inferred that notice of the stolen bonds came in regular course of mail and business into the hands of the proper and only agent of defendant authorized to receive and open its mail, and that in the line of his duty he put the rubber stamp on the receipt and mailed it back. As he had to inspect the contents of the mail in order to know to whom to distribute it he personally must have received actual knowledge of the theft of the bonds.

It becomes a question of law, therefore, whether or not his actual knowledge was that of the defendant corporation which must necessarily acquire knowledge, if at all, through its authorized agents. It is true that the several officers of the bank having to do with the negotiating of said loan denied any knowledge of the notice or of receiving it. But in our opinion the fact of actual notice depends on the authority of the agent to acquire it through opening and inspecting the bank's mail and not on his duty to report it to other agents of the bank. If there was neglect in that respect on his part it did not change the fact that the notice was received by the agent of

the bank authorized to receive, acknowledge and deal with it. If to constitute actual knowledge of the bank it would be necessary to bring such notice to the personal attention of each of its several agents likely to deal with such securities then it would open the door to an easy evasion of liability and put a premium on the negotiation of stolen securities. The notice having been received by the proper agent of the bank to receive, open and acknowledge its mail in the line of his duties, we think the bank is estopped from claiming that it did not have actual knowledge of the defect in the title to the bonds it subsequently received.

Under modern methods of doing business whereby ready reference may be had to such information thus furnished it, we cannot regard the knowledge thus once obtained by the proper agent to receive it, as being any less actual and binding because at the time of the negotiation of the stolen securities it may have been overlooked or forgotten. Such a fact may be material as held in the case in 56 Barbour and references, where the element of bad faith alone is considered. But the statute makes the alternative of actual knowledge equally important, and it is not made subject to the condition of having been overlooked or forgotten. The difficulties of bringing actual knowledge to the several inmates of banks and brokerage offices, through whom the negotiation of such securities is most likely to be attempted, renders it highly desirable for the protection of innocent losers that the receipt of a special notice of this character by such banks or brokers in the regular course of business should be sufficient to put them on guard against aiding in the circulation of stolen negotiable securities.

In this view of the case we think upon the undisputed evidence defendant had actual knowledge that the bonds were stolen, and as a matter of law was,

therefore, not a holder in due course under the uniform Negotiable Instruments Law.

Accordingly as a matter of law the judgment will be reversed and judgment will be entered here for the face of the bonds, namely, $9,000, with interest thereon at the rate of 6 per cent from February 1, 1925, up to which time the bond coupons had been paid or clipped from the bonds before they were received by defendant.

*Reversed and judgment here.*

GRIDLEY, P. J., and FITCH, J., concur.