## PAEPCKE v. PAINE.

1. Negotiable Instruments—Bills and Notes—Bonds—Conflict of Laws.

Whether certain bonds are negotiable should be determined by law of State where they are issued and made payable.

2. Same—Presumption That Bonds Issued With Knowledge of Applicable Law.

Corporation bonds issued and made payable in New York must be assumed to have been issued with full knowledge of usage of courts of that State to attach to them attributes of commercial paper, and with manifest design that they should be so circulated.

3. Same—Instrument Determines Its Character in Respect to Negotiability.

Instrument itself determines its character in respect to negotiability, so that, to be negotiable, it must conform to requirements of negotiable instruments law.

4. Same—Negotiable Bonds Governed by Negotiable Instruments Law.

Bond and trust agreement securing its payment do not constitute single contract, but they are separate instruments executed for different purposes and not of same nature, so that bond, if negotiable in form, is governed by law applicable to negotiable instruments, and holder may abandon security and enforce payment of bond according to its terms.

5. Same—Trust Agreements as Affecting Negotiability of Bonds Secured Thereby.

Trust agreement securing payment of bond, unless referred to in way to incorporate its provisions into bond, is but incident thereto, and is to be regarded as security only, and does not affect negotiability of bond.

6. Same—Negotiability Not Destroyed Because Instrument Accompanied by Statement of Transaction.

Under negotiable instruments law, an instrument containing an unconditional promise or order to pay sum certain in money is negotiable, and such provision is not affected though coupled with statement of transaction which gives rise to the instrument, but if it contains special stipulations, and payment is subject to contingencies not within control of holder, it is

Private corporation bonds as negotiable within the meaning of negotiable instruments act, see annotation in 31 A. L. R. 1390.

deprived of its negotiable character and becomes exposed to existing defenses as though still held by original party thereto.

7. SAME—ESSENTIAL ELEMENTS OF NEGOTIABILITY.
Essential elements of negotiability are certainty in sum to be paid and in time of payment.

8. SAME—RIGHT TO SUE IN OWN NAME NOT ESSENTIAL TO NEGOTIABILITY.
Although New York negotiable instruments law (article 6, § 90) provides that holder of negotiable instrument may sue thereon in own name, it does not prescribe such right as necessary element of negotiability.

9. SAME—PROVISION THAT ACTION TO ENFORCE COLLECTION BE BROUGHT BY TRUSTEE DOES NOT DESTROY NEGOTIABILITY.
That trust agreement securing payment of bonds provides that in case of default trustee shall represent bondholders in action brought to enforce collection does not destroy their negotiability.

10. SAME—ACCELERATION DOES NOT DESTROY NEGOTIABILITY.
Possibility of acceleration of date when bonds are due if there is default under mortgage does not make them nonnegotiable.

11. SAME—STOLEN BONDS—DIRECTED VERDICT.
In action against good-faith purchasers of negotiable bonds which had been stolen from plaintiff, verdict should have been directed in favor of defendants.

Error to Wayne; Hunt (Ormond F.), J. Submitted October 29, 1930. (Docket No. 102, Calendar No. 35,212.) Decided April 7, 1931. Rehearing denied June 25, 1931.

Replevin by Elizabeth H. Paepcke against William A. Paine and others, a copartnership doing business as Paine, Webster & Company, to recover certain corporate debentures. Judgment for plaintiff. Defendants bring error. Reversed.

*Miller, Canfield, Paddock & Stone,* for plaintiff.

*George E. Brand,* for defendants.

*Shearman & Sterling (Philip A. Carroll,* of counsel), *E. B. Howarth, Bulkley, Ledyard, Mills &*

*Dickinson (Charles H. L'Hommedieu* and *William B. Cudlip,* of counsel), *Fisher, Boyden, Bell, Boyd & Marshall,* and *Beaumont, Smith & Harris (Don M. Dixon,* of counsel), *amici curiæ.*

Sharpe, J. Plaintiff brought replevin to recover from defendants, a firm of brokers, certain corporate debentures, hereafter spoken of as bonds, which had been stolen from her, but which had been acquired by defendants in good faith, for value and without notice. Trial was had before the court without a jury. An agreed statement of facts was filed. It is conceded that, if the bonds are negotiable instruments, defendants have title thereto. The court found as a matter of law that they were not, and entered a judgment for the plaintiff, of which defendants seek review by writ of error.

It seems to be further conceded that, in decision of the question presented, we should apply the law of the State of New York, where the bonds were issued and are made payable. This is in accord with the holding of this court. *Fidelity & Deposit Co.* v. *Andrews,* 244 Mich. 159; *City Bank & Trust Co.* v. *Atwood,* 197 Mich. 116.

The applicable provisions of the negotiable instruments law of that State (Cahill's Consolidated Laws of New York, 1930, Chap. 39, Art. 3)[1] appear

---

[1] Art. 3, § 20. "An instrument to be negotiable must conform to the following requirements:

"1.   It must be in writing and signed by the maker' or drawer;

"2.   Must contain an unconditional promise or order to pay a sum certain in money;

"3.   Must be payable on demand, or at a fixed or determinable future time;

"4.   Must be payable to order or to bearer; and

"5.   Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty."

Art. 3, § 22. "An unqualified order or promise to pay is unconditional within the meaning of this chapter, though coupled with:

in the margin. While this act does not in express terms refer to bonds of corporations, the court of appeals of that State in an early day (*Brainerd* v. *Railroad Co.,* 25 N. Y. 496) and courts generally since that time have attached to them the attributes of commercial paper. (See note, 31 A. L. R. 1390.) It must be assumed that the bonds here in question were issued with full knowledge of the prevailing usage, and with the manifest design that they should be so circulated.

The instrument itself determines its character. It must, of course, conform to the requirements of the negotiable instruments law. But the statute deals with its form—with what an inspection of its face discloses.

"If in the bond or note anything appears requiring reference to another document to determine whether in fact the unconditional promise to pay a fixed sum at a future date is modified or subject to some contingency, then the promise is no longer unconditional. What that document may provide is immaterial. Reference to the paper itself said to be negotiable determines its character. (*Old Colony Trust Co.* v. *Stumpel,* 247 N. Y. 538 [161 N. E. 173].)" *Enoch* v. *Brandon,* 249 N. Y. 263, 267 (164 N. E. 45).

"In the instant case the question as to whether the note in question is negotiable or not must be

"1. An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or

"2. A statement of the transaction which gives rise to the instrument.

"But an order or promise to pay out of a particular fund is not unconditional."

Art. 3, § 23. "An instrument is payable at a determinable future time, within the meaning of this chapter, which is expressed to be payable:

"1. At a fixed period after date or sight; or

determined by an examination of the note itself. (See *Continental Guaranty Corp.* v. *People's Bus Line*, 31 Del. 595 [117 Atl. 275]; *International Finance Co.* v. *Northwestern Drug Co.*, 282 Fed. 920.) As stated in the last-mentioned case, a departure from this rule would throw the whole law of commercial paper into confusion." *National Bond & Inv. Co.* v. *Lanners*, 253 Ill. App. 262, 270.

There is, however, authority to the contrary. See, *Hubbard* v. *Wallace Co.*, 201 Iowa, 1143 (208 N. W. 730, 45 A. L. R. 1065, and the copious note appended thereto in the latter).

Much of the difficulty in decision is due to the application of the rule that two or more instruments, executed by the same parties at the same time and referring to each other, must be read together as constituting but a single contract between the parties. But a note and a mortgage securing its payment do not constitute a single contract. They are separate instruments, executed for different purposes and not of the same nature. The note, if it be negotiable in form, is governed by the law applicable to negotiable instruments, and the mortgage by the law of real property. The holder of such a

---

"2. On or before a fixed or determinable future time specified therein; or

"3. On or at a fixed period after the occurrence of a specified event, which is certain to happen, though the time of happening be uncertain.

"An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect."

Art. 3, § 24. "An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. But the negotiable character of an instrument otherwise negotiable is not affected by a provision which:

"1. Authorizes the sale of collateral securities in case the instrument be not paid at maturity; or

"2. Authorizes a confession of judgment if the instrument be not paid at maturity; or

"3. Waives the benefit of any law intended for the advantage or protection of the obligor; or

note may abandon his security, and seek to enforce payment of it according to its terms as written. The question of its negotiability will be determined by the law relating thereto. If they be construed together as but one instrument, the note loses its character as such, and recovery must be had upon the contract as evidenced by both instruments. What has been said relative to a note and mortgage applies with equal force to a bond, negotiable in form, and the trust agreement securing its payment.

The better rule, as we view it, is that announced in the New York and Illinois cases above referred to and the cases cited in support thereof. The form of the note or bond may alone be considered in determining its negotiability. The mortgage or trust agreement, unless referred to in a way to incorporate its provisions into the note or bond, is but an incident thereto, and is to be regarded as a security only. If the note or bond contains "an unconditional promise or order to pay a sum certain in money" at "a fixed or determinable future time" and is "complete and regular upon its face," it may be enforced according to its terms.

---

"4. Gives the holder an election to require something to be done in lieu of payment of money.

"But nothing in this section shall validate any provision or stipulation otherwise illegal."

Art. 3, § 28. "The instrument is payable to bearer:

"1. When it is expressed to be so payable; or * * *."

Art. 6, § 90. "The holder of a negotiable instrument may sue thereon in his own name; and payment to him in due course discharges the instrument."

Art. 6, § 91. "A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The bonds in question are undertakings on the part of the Container Corporation of America to pay to the bearer, or, if registered, to the registered owner thereof, on June 15, 1936, the sum of $1,000, and interest, payable semi-annually at the office of the trustee in the city of New York. Each of them recites that it is one of a duly authorized issue of $1,000,000—

"all issued under a certain trust agreement, dated as of June 15, 1926, executed by the company to the National City Bank of New York, as trustee, to which trust agreement reference is hereby made for a statement of the terms under which the said debentures are issued and the rights and obligations of the company, of the trustee and of the respective holders of the said debentures under the said trust agreement. To the extent provided in the said trust agreement, all rights of action upon this debenture are vested in the trustee."

Under the statute an instrument to be negotiable "must contain an unconditional promise or order to pay a sum certain in money," but such provision is not affected "though coupled with * * * a statement of the transaction which gives rise to the instrument."

"But when such instruments contain special stipulations, and their payment is subject to contingencies not within the control of their holders, they are, by the established rules, deprived of the character of negotiable instruments, and become exposed to any defense existing thereto as though still held by the original parties to the instrument." 3 R. C. L. p. 845.

"It may be stated as the general rule that wherever a bill of exchange or promissory note contains a reference to some extrinsic contract in such

a way as to make it subject to the terms of that contract, as distinguished from a reference importing merely that the extrinsic agreement was the origin of the transaction, or constitutes the consideration of the bill or note, the negotiability of the paper is destroyed." 3 R. C. L. p. 883.

Negotiable paper is frequently used as a substitute for money, and the essential elements of negotiability are the certainty in the sum to be paid and in the time of payment. If the instrument on its face contains language creating uncertainty in either of these respects, it fails to meet the statutory requirements.

The reference in the bond above quoted does not assume to in any way affect the unconditional promise to pay. A purchaser is referred to the trust agreement for a statement of the rights and obligations of the company, the trustee, and the holders of the bonds "under the said trust agreement." It in no way refers to or qualifies the unconditional promise of the company to pay the bond at maturity theretofore clearly expressed. The reference gives notice to the bondholder that he may examine the trust agreement to ascertain the nature and kind of the security pledged to insure payment and the procedure provided for to enforce the same, should he care to do so before making purchase thereof. But it in no way imposes that duty upon him in order to determine the status of the bond as a negotiable instrument. In *Enoch* v. *Brandon, supra* (p. 268), in discussing the reference, the court said:

"We hold that here there is no modification of the promise to pay, made in explicit terms. The provisions all have to do with the trust mortgage. They refer to the rights conferred by it upon the bondholders and limit and explain those rights.

They are so linked together as to indicate that the obligor was speaking solely of the security. A purchaser scanning the bonds would have the same thought.''

See, also, *Hibbs* v. *Brown,* 190 N. Y. 167 (82 N. E. 1108).

There is a clear distinction between this reference and that contained in *Allan* v. *Moline Plow Co.* (C. C. A.), 14 Fed. (2d) 912, and *Crosthwaite* v. *Moline Plow Co.,* 298 Fed. 466, relied on by plaintiff, where there was reference to a trust agreement ''for a description of the terms under which the said notes are issued, and of the rights and obligations of the company and the trustee *with respect thereto.''* Under this reference the trust instrument must be examined to determine the rights and obligations of the company *under the notes;* in that before us it applies only to the rights and obligations under the trust agreement.

Stress is laid upon the last sentence in the above quotation, reading as follows:

''To the extent provided in the said trust agreement, all rights of action upon this debenture are vested in the trustee.''

Inclination would lead us, as it apparently did the trial court, to examine the trust agreement in order to ascertain the extent to which, under this provision, the rights of action are vested in the trustee. But, under the rule above stated that the bond itself must determine its character, we may not do so. The effect of the provision must be determined from the language used. It can have no application except in case of default, as no right of action can accrue until that time. The provision is in the nature of an agreement among the bondholders that the

trustee shall represent all of them in any action which may be brought to enforce collection.

The statute provides:

"The holder of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument." (Art. 6, § 90.)

It does not prescribe the right of a holder to sue in his own name as a necessary element of negotiability.

This provision in the bond contains no intimation that the promise to pay, or the time of payment, is affected thereby. Under it the right to bring action to enforce the promise is "to the extent provided in the said trust agreement," vested in the trustee. The trust agreement is in the nature of a security for the payment of the debt. It is primarily for the benefit and advantage of the bondholders, and may contain provisions for collateral security; provide for a sinking fund; give rights to convert bonds or debentures into stock of the company; restrict the right of the company to merge with another, and otherwise provide for the mutual and respective interests of the parties, collateral to the promises and agreements in the bond.

An individual owner of a bond could ill afford to bear the expense incident to the enforcement of the obligation in case of default. A provision such as here considered must be treated as one for his benefit, and to insure an orderly method of procedure for collection, thus avoiding the necessity of a multiplicity of separate actions. A purchaser of one of these bonds takes with notice that he thereby makes the trustee his agent to act for him in case of default. But it will not be assumed that the

trustee so acting is limited by this reference from discharging the duty he owes to the bondholders to at all times protect their interests.

"A general provision limiting the right of a trustee to foreclose would evidently be void." 4 Thompson on Corporations (3d Ed.), § 2689.

In a note in 16 L. R. A. (N. S.) 1014, it is said:

"If the trustees improperly refuse to commence proceedings for the protection of the rights of the bondholders, such refusal does not leave the latter without remedy; they may, upon such refusal, commence in their own names proceedings for the protection of their rights."

Many authorities are cited in support of this statement.

The bonds also contain a provision that—

"In case any default shall occur as set forth in the said trust agreement, the principal of all the debentures issued and outstanding thereunder may be declared, and shall thereupon become, due and payable before maturity in the manner and with the effect therein provided."

In *Enoch* v. *Brandon, supra,* the court said in regard to such a provision:

"There is the possibility of the acceleration of the date when the bonds are due if there is default under the mortgage. Such a possibility does not make them nonnegotiable."

See, also, *McCornick & Co.* v. *Gem State O. & P. Co.,* 38 Idaho, 470 (222 Pac. 286, 34 A. L. R. 867), where the late cases are collected and commented upon, and, also, 3 R. C. L. p. 909.

It follows from what has been said that, in our opinion, the bonds in question are negotiable instruments and the defendants, had title thereto.

The judgment is reversed, with costs, and the case remanded, with direction to enter a judgment for the defendants.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.