MERCHANTS NATIONAL BANK *v.* DETROIT TRUST CO.

1. Bills and Notes—Negotiable Instruments—Bonds—Conflict of Laws.

   Question of negotiability of bonds is determined by law of State where they were issued and made payable.

2. Same—Instrument Itself Determines Its Character.

   Since instrument itself determines its character as to negotiability, bond is negotiable only if unconditional promise to pay appears on its face, and it conforms to requirements of negotiable instruments law (2 Comp. Laws 1929, § 9252).

3. Same—Unconditional Promise to Pay.

   Unqualified order or promise to pay is unconditional within meaning of negotiable instruments law though coupled with statement of transaction which gives rise to instrument.

4. Same—Reference to Provisions of Mortgage.

   Recitation on face of bond that it is "subject to the provisions of an indenture of mortgage," *held,* not to impair its negotiability.

5. Same—Reference to Security Does Not Impair Negotiability.

   Reference in bond to mortgage to determine upon what conditions it was issued, "received and held" does not impair its negotiability; reference being to security merely.

6. Same—Recitation of Surplusage Does Not Destroy Negotiability.

   Recitation in bond that its acceptance is assent to the terms and conditions upon which it issued is mere surplusage and does not impair its negotiability, since it only recites what law would imply.

7. Same—Reference to Mortgage.

   Reference in bond to conditions in mortgage from which purchaser may learn use which is to be made of money received from its sale does not impair its negotiability.

On conflict of laws as to negotiable paper, see annotation in 61 L. R. A. 193; 19 L. R. A. (N. S.) 665.

As to stolen or lost instruments, see annotation in 2 L. R. A. (N. S.) 770, 771.

8. Same—When Bond Not Negotiable Because of Reference to Mortgage.

    Where negotiability of bond cannot be determined by its face, because it incorporates by reference all provisions of mortgage, it is not negotiable.

9. Same—Holder in Due Course.

    Holder in due course is one who has taken without notice of any infirmity in instrument or any defect in title of person negotiating it (2 Comp. Laws 1929, § 9301).

10. Same—Notice of Infirmity.

    To constitute notice of infirmity in instrument, or defect in title of person negotiating same, person to whom it is negotiated must have had actual knowledge of infirmity or defect, or knowledge of such facts that his action in taking instrument amounted to bad faith (2 Comp. Laws 1929, § 9305).

11. Same—Stolen Bonds—Burden of Proof—Holder in Due Course.

    In action for recovery of certain bonds, plaintiff having shown that they were stolen, burden was on defendant to prove that it was holder in due course.

12. Same—Notice—Presumption of Notice from Proof of Mailing—Rebuttable Presumption.

    Proof by plaintiff of mailing notice to defendant of theft of certain bonds raises presumption that notice was received, but it is rebuttable presumption.

13. Same—Proof of Notice.

    Proof that notice of theft of certain bonds was received by defendant's mailing clerk was insufficient to establish notice to defendant, where its officers, to whom said notice should have been sent, testified without contradiction that they never received it.

14. Same—Disregarding Notice—Holder in Due Course.

    While one may disregard notice of stolen bonds and yet be purchaser in good faith, he may not resort to trick or artifice to avoid knowledge of its contents, or he may not purposely forget it, but must act in good faith.

15. Same—Stolen Bonds—Holder in Due Course.

    Where bonds were acquired before maturity, for value, and in good faith, purchaser is holder in due course, although they were stolen by seller.

Appeal from Wayne; Lamb (Fred S.), J., presiding. Submitted January 21, 1932. (Docket No. 144, Calendar No. 36,227.) Decided June 6, 1932.

Replevin by Merchants National Bank against Detroit Trust Company, a Michigan corporation, for stolen bonds. Judgment for plaintiff. Defendant appeals. Reversed in part, affirmed in part.

*Lightner, Hanley, Crawford & Dodd,* for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendant.

McDonald, J. The defendant has appealed from a judgment in an action of replevin for the recovery of certain corporate bonds which were stolen from plaintiff bank at Defiance, Ohio, and for certain other bonds stolen from the First National Bank of Columbus, Wisconsin, the right to which the plaintiff has acquired by assignment. All of these bonds subsequently came into the possession of the defendant as collateral to a loan made to one of the bandits who stole them. The Ohio bank bonds involved are:—Butte, Anaconda & Pacific Railway Company, $1,000; Kingdom of Belgium, $2,000; Oriental Development Company, Ltd., $2,000; Missouri Pacific Railroad Company, $1,000; Erie Railroad Company, series A, $1,000; Sinclair Pipe Line Company, $5,000; City of Marseilles, $1,000; Government of French Republic, $1,000. The bonds acquired by assignment from the Wisconsin Bank are Ogden Gas Company, $3,000.

The issue involves two questions: (1) Are these bonds negotiable? (2) If so, was defendant a holder in due course?

It is conceded by the plaintiff that all of the bonds are negotiable except the Butte, Anaconda & Pacific

Railway Company, the Sinclair Pipe Line Company, the Ogden Gas Company, and the Erie Railroad bonds.

Counsel have stipulated that decision on the question of negotiability is controlled by the law of New York where the bonds were issued and made payable. This is in line with the holding of our court in *Paepcke* v. *Paine,* 253 Mich. 636 (75 A. L. R. 1205).

As to the disputed bonds the question is, Do they contain an unconditional promise or order to pay at a certain time, and, at all events, a certain sum in money? If negotiable, the unconditional promise must appear on the face of the bond. In *Paepcke* v. *Paine, supra,* it is said:

"The instrument itself determines its character. It must, of course, conform to the requirements of the negotiable instruments law. But the statute deals with its form—with what an inspection of its face discloses."

And in *Enoch* v. *Brandon,* 249 N. Y. 263 (164 N. E. 45), quoted with approval in *Paepcke* v. *Paine, supra,* it was said:

"If in the bonds anything appears requiring reference to another document to determine whether in fact the unconditional promise to pay a fixed sum at a future date is modified or subject to some contingency, then the promise is no longer unconditional.

"It may be stated as the general rule that wherever a bill of exchange or promissory note contains a reference to some extrinsic contract in such a way as to make it subject to the terms of that contract, as distinguished from a reference importing merely that the extrinsic agreement was the origin of the transaction, or constitutes the consideration of the bill or note, the negotiability of the paper is destroyed." 3 R. C. L. pp. 883, 884.

In the negotiable instruments law it is said:

"An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with * * * a statement of the transaction which gives rise to the instrument." (Cahill's Consol. Laws N. Y., chap. 39, § 22, 2 Comp. Laws [Mich.] 1929, § 9252.)

In applying these tests to the bonds in question, we will first consider the Butte, Anaconda & Pacific Railway bond.

This bond is negotiable unless the promise to pay is modified and rendered uncertain by the following provision:

"This bond * * * is entitled to the benefits and subject to the provisions of an indenture of mortgage dated February 1, 1914, made by the company to Guaranty Trust Company of New York as trustee, to which mortgage reference is hereby made for a description of the property and franchises mortgaged, the nature and extent of the security, the rights of the holders of the said bonds under the same, and the terms and conditions upon which said bonds are issued, received and held."

If the words "subject to the provisions of an indenture of mortgage" and the words "received and held" were eliminated from the above reference, the bond would be negotiable under the holding in *Paepcke* v. *Paine, supra*. If the words "received and held" were eliminated, it would be negotiable under the holding in *Enoch* v. *Brandon, supra*. In the latter case, the court held that the words "subject to the provisions" of an indenture of mortgage did not impair the negotiability of the bonds. It was said that a purchaser scanning the bonds—

"Would interpret the statement that the bonds were secured by and entitled to the benefits and sub-

ject to the provisions of the mortgage, as meaning that a foreclosure or other relief might be had thereunder only subject to its provisions. He would see that reference to it is also made to determine the terms and conditions under which the bonds are issued and secured. Again it would mean as it means to us, that only by turning to the mortgage might he discover the precise nature of the lien he is to obtain. He would see that the bonds were to be issued not only upon the general credit of the corporation, but upon the faith of some collateral mortgage. To it he must go if further knowledge as to this security is desired."

In regard to this bond, its negotiability depends on the effect of the words "received and held." A reference in the bond to a mortgage to determine upon what conditions it was issued does not impair its negotiability. *Enoch* v. *Brandon, supra.* The words "received and held" add nothing to "issued," because the terms and conditions on which the bond is issued show how it was received and held. There is nothing in the words themselves indicating that there may be some condition in the mortgage qualifying the unconditional promise of the bond. They refer to the security.

It is our conclusion that the Butte, Anaconda & Pacific Railway Company bond is negotiable under authority of *Enoch* v. *Brandon, supra.*

The reference in the Sinclair Pipe Line Company bond reads as follows:

"To which trust agreement reference is hereby made for a statement of terms under which said bonds are issued, and of the rights and obligations of the company, the trustee and the respective holders of said bonds thereunder, to all of which terms the holder of this bond assents by the acceptance hereof."

With the exception of "to all of which terms the holder of this bond assents by the acceptance hereof" the language of this reference is substantially the same as that in *Paepcke* v. *Paine, supra,* where this court held the bond negotiable.

The language providing that the acceptance of the bond is an assent to the terms and conditions upon which it was issued is of no consequence. Without any declaration of that kind, the law would imply from the fact of acceptance an assent to the terms and conditions referred to in the bond. The language is so much surplusage. Under the holding of this court in *Paepcke* v. *Paine, supra,* the Sinclair Pipe Line Company bond is negotiable.

The reference in the Erie Railroad Company bond reads as follows:

"To which reference is hereby made for a description of the property and franchises mortgaged and pledged, the nature and extent of the security, the rights of the holders of said bonds under the same, and the terms and conditions upon which said bonds are secured and are to be used."

From the language used, we do not understand that this reference is to the terms and conditions upon which these bonds are to be used by a purchaser. Bonds are issued to sell. They may be a more attractive investment if the investor knows how the proceeds from the sale are to be used. There would be no advantage in restricting their use in the hands of a purchaser. There would be a decided advantage in the sale of the bonds if the investor knew the proceeds were to be put to a proper use. The language of the reference advises an investor that, in considering whether the purchase of these bonds is a safe investment, he may look to the conditions of the mortgage to learn the use which is to

be made of the money received from their sale. The Erie Railroad bond is negotiable.

The Ogden Gas Company bonds contain the following recital:

"This bond and the coupons thereto attached are expressly made subject to and shall be bound by all of the provisions in the said mortgage or deed of trust contained, the same as though all of said provisions were herein expressly set forth and the holder hereof expressly acknowledges notice of all such provisions."

The negotiability of these bonds cannot be determined by their face. They incorporate by reference all of the provisions of the mortgage. Under all decisions of the courts, they are not negotiable.

2. Was defendant a holder in due course? Section 9301, 2 Comp. Laws 1929, defines a holder in due course as one who has taken the instrument under certain conditions, one of which is:

"Fourth, that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 9305 provides:

"To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

In this case, the plaintiff having shown that the bonds were stolen, the burden was then upon the defendant to prove that it was a holder in due course.

It is claimed by the plaintiff that, within 10 days after the theft of the bonds, it mailed written notices containing a description of them to all of the prin-

cipal banks and trust companies of the middle west, including the defendant company. The defendant denies having received such a notice. Proof of the mailing of the notice raises a presumption that it was received, but it is a rebuttable presumption. All of the officers of the defendant company having to do with the loan in question testified that they did not see the notice and had no knowledge of it or of any circumstance tending to show a defect in the title of the bonds. According to the defendant's custom, mail addressed to the Detroit Trust Company and not to any particular person or department was opened by one of the mail clerks and sent to the person in charge of the business to which it related. Following this custom, the plaintiff's notice, if received at the mailing department, would be sent to Mr. Butler, vice-president in charge of the financial department, then to Mr. Miller, assistant treasurer, and finally to Mrs. Irving, collateral loan teller. All of these officers had a part in the loan for which the bonds were accepted as collateral. We have no reason to doubt their testimony that they did not see or receive the notice. But assuming that it was received, that they saw it and forgot about it or carelessly mislaid it so that it was not in their minds at the time they acquired the bonds; or assuming that it was received, but through the carelessness of the mailing clerk it was not brought to the attention of the officers, how would these facts affect the company's title as holder in due course?

In *Toledo, etc., R. Co.* v. *Peters*, 177 Mich. 76, this court adopted the following rule stated in Jones on Corporate Bonds and Mortgages (3d Ed.), § 200:

"A purchaser of negotiable bonds before due, for a valuable consideration, in good faith and without actual knowledge or notice of any defect of title,

holds them by a title valid as against every other person. Even gross negligence at the time of purchase does not alone defeat the purchaser's title. A purchaser may have had suspicion of a defect of title, or knowledge of circumstances which would excite such suspicion in the mind of a prudent man; or he may have disregarded notices of stolen bonds; and yet, if he has purchased for value in good faith, his title cannot be impeached. Such suspicion, or ground of suspicion, or of knowledge on his part, may be evidence of bad faith; but before his title can be impeached his bad faith must be established. It must be shown that he did not purchase honestly.''

In the instant case, if the defendant did not acquire the bonds honestly, it was because it had notice that they were stolen. The plaintiff claims it had actual notice. We think there was no evidence to overcome the presumption that the notice mailed by the plaintiff was delivered to the defendant's mailing department; but, neither was there any evidence in contradiction of the officers that they did not see the notice or acquire knowledge of its contents. Unless we follow the holding in *North Western National Bank* v. *Madison & Kedzie State Bank,* 242 Ill. App. 22, we must find as a fact that when the defendant acquired the bonds it had no notice that they were stolen. In that case, which was an action to recover stolen bonds, it was shown that notice was received by the mailing clerk of the defendant bank. The officers of the bank with whom the bonds were negotiated denied having received the notice. The court said:

''The notice having been received by the proper agent of the bank to receive, open and acknowledge its mail in the line of his duties, we think that the bank is estopped from claiming that it did not have

actual knowledge of the defect in the title to the bonds it subsequently received.''

As far as we have been able to determine this case stands alone. It estops the purchaser from showing good faith at the time the bonds are acquired. It makes notice of theft conclusive evidence of *mala fides*. It overlooks the well-established rule that though one has received actual notice, if by forgetfulness or negligence he does not have it in mind when he acquires the bonds, he may still be a good-faith purchaser. It has been said that the test is one of simple honesty and good faith. In *Lord* v. *Wilkinson*, 56 Barb. (N. Y.) 593, the trial court charged the jury that:

''The defendants, once having had notice, are bound by it, although the notice may have been forgotten.''

In holding the instruction erroneous the court said:

''If the rule is well founded, that notice once given is good forever—that knowledge acquired when notice is given, is conclusive evidence of knowledge possessed when the notes were bought—then this charge is correct. But if the *bona fides* of the defendants must be judged of from their acts, purposes and knowledge as they existed upon the day of the purchase, then the notice served is only *prima facie* or presumptive evidence of *mala fides,* and may be rebutted by proof that the notice was lost, or its existence and contents forgotten.''

And it has been held that one is not required to examine such notices, or, if examined, charge his mind with them or cumber his files with them. Joyce, Defenses to Commercial Paper, § 394, p. 509; *Vermilye & Co.* v. *Adams Express Co.,* 21 Wall. (U.

S.) 138; and *Seybel* v. *National Currency Bank,* 54 N. Y. 288 (13 Am. Rep. 583).

In *Toledo, etc., R. Co.* v. *Peters, supra,* it was said that one may disregard notice of stolen bonds and yet be a purchaser in good faith. In saying that one may disregard the notice, it was not meant that he may wilfully close his eyes to it. He may not resort to trick or artifice to avoid knowledge of its contents or he may not purposely forget it. He must act in good faith. Such notice may be evidence of bad faith, but it is not conclusive. In the instant case, the notice was received by the mailing clerk, but the three officers of the trust company deny that they received it or were made acquainted with its contents. We know of no reason why we should doubt their testimony. The record shows that they acted in good faith.

As the bonds in question were acquired before maturity, for value, and in good faith, the defendant is a holder in due course. All except the Ogden Gas Company bonds are negotiable. The judgment is reversed, and the cause remanded to the circuit court for the entry of a judgment in favor of the plaintiff for the value of the Ogden Gas Company bonds. The defendant will have costs.

CLARK, C. J., and POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred. FEAD, J., did not sit.