## Bell, Secretary of Banking, Receiver, *v.* Reisman, Appellant.

Argued January 26, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Reese H. Harris,* of *O'Malley, Hill, Harris & Harris,* for appellant.

*J. Julius Levy,* with him *John W. Lord, Jr.,* Special Deputy Attorneys General, *Orville Brown,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellee.

OPINION BY MR. JUSTICE DREW, March 23, 1942:

The Secretary of Banking of the Commonwealth, as Receiver of the Bosak State Bank, brought this suit in assumpsit against defendant, Charles Reisman, to recover the sum of $4,900, with interest thereon, alleged to be the balance due on a certain promissory note. Judgment having been entered for plaintiff for want of a sufficient affidavit of defense, defendant has appealed.

From the statement of claim it appears that on April 29, 1925, defendant and Jacob Mechlovics, now deceased, borrowed the sum of $10,000 from the Bosak State Bank and evidenced their debt by their joint and several demand note. With the note and as collateral security therefor, they also gave their bond and mortgage, in a like amount, covering a piece of real estate situate at Lake Ariel, Wayne County. On October 1, 1931, the bank, being insolvent, passed into the hands of the Secretary of Banking for liquidation. On June 3, 1938, there still remaining due and owing on the indebtedness the sum of $9,400, the Secretary of Banking, through his deputy receiver, petitioned the Court of Common Pleas, under section 716 of the Act of May 15, 1933, P. L. 565, known as the "Department of Banking Code", for leave to compromise and assign the bond and mortgage for $4,500 to one George Miller, Attorney, who was then acting for an undisclosed client. The court thereupon entered an order authorizing such assignment. The deputy receiver accordingly assigned the bond and mortgage to Miller, and at the same time delivered to him the note in suit. Thus accounting for the lack of possession of the original note, and giving credit for the sum of $4,500 paid by Miller, the statement of claim, to which was attached a copy of the note in question, alleges that there is still due on the indebtedness by defendant the sum of $4,900, with interest, for which the present action was instituted.

Defendant, in his affidavit of defense, as amended, admits the execution and delivery of the note for $10,000 and the giving of the bond and mortgage as collateral therefor, but avers, however, that Miller was in fact acting in behalf of defendant and his son-in-law, who was rendering financial assistance in the settling of this indebtedness, and that upon the payment by Miller of the $4,500 and the assignment of the bond and mortgage and the delivery of the note by the deputy receiver, the entire debt to the bank was compromised, settled and extinguished.

To determine this controversy we must answer the following questions: was the assignment of the bond and the mortgage, as authorized by the court, intended as a complete discharge of defendant's obligation; or was it merely a sale of the collateral in reduction pro tanto of the indebtedness. Our answers depend solely upon a true interpretation of the petition of the Secretary of Banking for authority to dispose of the collateral and the resultant order of court.

The pertinent allegations of the petition are that the bank "holds a mortgage of Charles Reisman and Jacob Mechlovics in the principal amount of $10,000 as collateral for a note given by the same parties on which the balance now due is $9,400.00"; that the "said Jacob Mechlovics is now deceased . . . and his estate is insolvent"; and that the "State Banking authorities charged with the liquidation of the said Bosak State Bank have received an offer to pay $4,500.00 cash for an assignment of the above mentioned mortgage, and the bond accompanying the same, from George Miller, Attorney, the acceptance of which offer the said banking authorities after due consideration deem it advisable to accept, notice of such decision first having been given to the said Charles Reisman, the surviving mortgagor." The prayer of the petition reads as follows: "Wherefore your petitioner respectfully prays for an order authorizing him to accept the offer made by George Miller, Attorney, to pay the $4,500.00 in full settlement, and for the assignment of the mortgage hereinabove mentioned, together with the bond accompanying the same, and thereupon to execute and deliver the said assignment." Upon consideration of the petition, the learned court below entered the following order: "Now, June 3, 1938, upon presentation of the within petition . . . Jerome P. Casey, Deputy Receiver, is authorized to accept the offer of George Miller, Attorney to pay $4,500.00 in full settlement, and for the assignment of the mortgage given by Charles Reisman and Jacob Mechlovics . . . and upon receipt of

said sum to execute and deliver the assignment of the said mortgage and bond accompanying the same . . ." A careful reading of the petition and the order of court, and consideration of all the admitted facts surrounding the transaction, make it obvious that all the receiver did was to sell and assign the bond and mortgage to Miller, who actually represented defendant and his son-in-law, and that that was all the court authorized him to do. The same court, in this controversy, so interpreted the petition and order, and said: "The facts are that the defendant without disclosing his assets has secured an evidence of debt against himself amounting to $9400 upon payment by his agent of $4500, and has secured $4800 of property which had been placed as security for the debt. Thus he has escaped payment of any sum of money whatever for his liability." Certainly if it had been intended to relieve defendant from his full obligation of $9,400, the petition would have averred that he was insolvent, as was his co-maker's estate, and would not have set forth that notice of the assignment to Miller was given to him. We do not believe that any deception was practised upon the court, but if the contention of defendant is true, good faith having required disclosure of all the facts at the time the order was requested, it must be conceded that the court was very badly informed. It is unreasonable to think that any court would consciously sanction such an unfair settlement as that insisted upon by defendant.

The note specifically states that the mortgage and bond are given as collateral for the debt, and recites the following rights on the part of the holder in case of default: ". . . to sell, assign and deliver the whole, or any part of such securities [the collateral] . . . at public or private sale, at their option, at any time . . . *After deducting all legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale . . . to pay any . . . of said liabilities . . . and the undersigned will still remain liable for any*

*amount so unpaid."* (Italics added.) In view of these provisions of the note itself and the language of the petition and order of court, it is obvious that the intention was merely to dispose of the collateral and to apply the $4,500 received therefor toward the reduction of the indebtedness.

The note, and the bond and mortgage given as collateral, do not constitute a single contract; they are separate and distinct instruments, executed for different purposes: *Paepcke v. Paine,* 253 Mich. 636, 235 N. W. 871, which case was cited with approval in *Gerber's Estate,* 337 Pa. 108, 125. The note is the contract to pay the obligation and the bond and mortgage are that which are given to secure such payment. There is nothing to prevent a sale and assignment of the collateral, separate from the indebtedness but in reduction of it, where, as here, the parties so intended.

The fact that the deputy receiver turned the note over to Miller at the time he assigned and delivered to him the bond and mortgage can in no way aid the appellant. While it is true that generally the possession of a note shows prima facie that the obligation has been paid *(Citizens' Bk. of Wind Gap v. Lipschitz,* 296 Pa. 291, 296), nevertheless, where the facts show that the instrument was surrendered without authority, no such presumption can arise. The deputy receiver had not petitioned for settlement and extinguishment of the entire indebtedness, and the court did not authorize it to be done. Therefore, the inadvertent surrender of the note to Miller was nugatory.

Appellant contends that the phrase "to pay $4,500.00 in full settlement, and for the assignment of the mortgage", as used in the petition and the order of court indicates that the intention was to compromise the full obligation. With this contention we do not agree. The words "in full settlement" are general in their scope and cannot possibly be interpreted to include anything other than the subject-matter in the petition and order; i. e., the

bond and mortgage. This general expression was not necessary to the judgment of the court, and it cannot be taken advantage of by applying it to some other matter which was not the specific subject of the proceedings. See *Kates' Estate*, 282 Pa. 417; *Lancaster Tr. Co. v. Engle*, 337 Pa. 176. Moreover, the deputy receiver could not go beyond the authorization granted by the order of court.

For these reasons the learned court below properly entered judgment for plaintiff for want of a sufficient affidavit of defense.

Judgment affirmed.