FIRST NATIONAL BANK & TRUST CO. OF ANN ARBOR *v.* WUERTH.

1. BILLS AND NOTES—HOLDER IN DUE COURSE.
    Payee of notes may be holder in due course or its equivalent.

2. SAME—FRAUD—BAD FAITH—NOTICE OF FRAUD.
    Where, in action on note by bank, defense was that defendants were induced to indorse note and afterward to execute new note by false representations made in presence of bank's president, to prevent recovery, he must have had actual knowledge of fraud or knowledge of such facts as constituted bank's act of taking note bad faith (2 Comp. Laws 1929, § 9305).

3. SAME—NOTICE OF FRAUD—SUFFICIENCY OF EVIDENCE.
    Defendant's claim that bank's president must have known of falsity of representations made in his presence which induced them to sign note as indorsers and later to execute new note, *held,* not justified by record (2 Comp. Laws 1929, § 9305).

4. SAME—FRAUD—RATIFICATION.

Where bank's president, in taking note payable to bank, had no knowledge of alleged fraud inducing its execution, bank did not ratify and adopt said fraud by bringing action after it had knowledge thereof.

Appeal from Washtenaw; Sample (George W.), J. Submitted January 13, 1933. (Docket No. 95, Calendar No. 36,884.) Decided April 4, 1933.

Assumpsit by First National Bank & Trust Company of Ann Arbor against J. Fred Wuerth, William W. Baumgartner, and Edward F. Conlin on two promissory notes. Directed verdict for plaintiff against defendant Conlin, verdict and judgment for defendants Wuerth and Baumgartner. Plaintiff appeals. Reversed, and judgment ordered entered for plaintiff.

*Arthur Brown* (*Frank B. DeVine* and *Stivers & Hooper,* of counsel), for plaintiff.

*Andrew J. Sawyer* and *Jacob F. Fahrner,* for defendants Wuerth and Baumgartner.

FEAD, J. The suit is on two promissory notes. After appearance and plea by defendants, plaintiff had summary judgment. The judgment was set aside on the application of defendants Wuerth and Conlin, and Wuerth and Baumgartner filed amended pleas and notices, claiming fraud in securing their signatures. On trial, verdict was directed against defendant Conlin, and the jury found in favor of the other defendants. Plaintiff's motions for directed verdict and judgment *non obstante* were denied.

Plaintiff contends (1) it was entitled to direction of verdict and judgment *non obstante,* and (2) the verdict was against the great weight of the evidence.

The second contention would be plainly tenable if the first were not determinative.

In 1930 John Lundgren, substantially sole owner of the Ann Arbor Floral Company, and defendant Baumgartner, a realtor, entered upon a project to organize a new corporation, the Huron Holding Company, to take over the business of the floral company and to sell stock to the public. They engaged defendant Conlin, an attorney, to incorporate the company and secure permission from the State securities commission to sell stock. Lundgren gave information regarding the business to both Baumgartner and Conlin. They prepared a financial statement, including profit and loss account and inventory and appraisal, showing earnings for 1929 of $22,000, assets of $260,000, and liabilities of $104,000, the significant item of the latter being accounts payable of $6,300. It listed obligations to Frank Stivers of $23,000.

Frank Stivers, an attorney and a director of plaintiff bank, became interested in the floral company upon its organization in 1922, but had sold his stock to Lundgren in 1926. However, he held two chattel mortgages for $13,000 on the property, and was a creditor of both the company and Lundgren for considerable sums, directly and as indorser.

Baumgartner approached Wuerth, a wealthy man of varied business experience, to interest him in the project. Wuerth said he was not interested, because he recently had sold a large clothing establishment, did not want to engage in business, and desired to take a trip to Europe. However, he talked with Baumgartner and Conlin several times, and approved the Huron Holding Company plan except that he did not care to have stock sold to the public, as he would rather furnish or procure the

desired money himself. He learned that Stivers, as a creditor, would not sanction the project unless the obligations to him were taken care of. Stivers had expressed his proposition to Conlin, Conlin told Wuerth, and the latter wanted a statement in writing from Stivers. Stivers wrote a letter to Wuerth on May 20th and delivered it to Conlin, in which he stated that payment of the obligations of the floral company to the Interstate Credit Company, Ltd., which he represented, could be deferred to November 1st, and that he would continue to indorse renewal notes of the floral company until the same time in case Lundgren's note for $13,734.75 to plaintiff should be indorsed by Wuerth and accepted by the bank and the proceeds applied to pay Lundgren's obligations to Stivers, the credit company, and notes to plaintiff, upon which Stivers was indorser.

Conlin delivered the letter to Wuerth with a copy of the financial statement and other documents, making a remark which counsel intimates caused Wuerth to think that the whole had come from Stivers. Wuerth looked them over, and noticed the claimed earnings and accounts payable and total obligations, but said he was satisfied that the statements were incorrect. The next day the three defendants, Lundgren and Stivers met in Conlin's office. Defendants claim George E. Paul, president of plaintiff bank, was also present. We will assume he was, although he and others deny it. Wuerth testified he was still uninterested in the proposition, although it is evident the only purpose of the meeting was to arrange affairs until he could return from Europe. Stivers made it plain to defendants that he was anxious to get his obligations to the bank reduced, and said the bank would be lenient in the way of renewals of the Lundgren note in order to

aid the floral company, to which Paul acquiesced. Paul took no other part in the discussion except that Wuerth, late in his testimony, said Paul stated that he wanted Stivers' obligations reduced and it would be a good thing. Counsel contend Wuerth meant that Paul meant the floral company was a good thing, but, if so, Wuerth did not rely at all on Paul's opinion.

The only fraud claimed is that Stivers said to defendants that the floral company was a wonderful proposition, that it had only $6,300 accounts payable and had made a profit of over $20,000 the preceding year. Wuerth and Baumgartner testified that they relied solely upon Stivers' oral statement so made and not at all upon their own investigation, upon any of the financial statements, upon what others told them, nor anything else. Instead of a profit, there had been a loss the preceding year, and accounts payable were in excess of $30,000.

Wuerth and Stivers arranged that Stivers should pay the taxes and accounts payable out of collections during Wuerth's absence. Thereupon Paul went out, returned with a note, which Lundgren signed as maker and defendants as indorsers. The bank disposed of the proceeds by applying them to Lundgren's and Stivers' notes held by it, discharging them and returning them to the makers, in accordance with Stivers' letter to Wuerth and the agreement of the parties.

Defendants executed the note to obtain an interest in the floral company, and on the same day they took part in a meeting of the stockholders and became directors and officers. Lundgren was the manager. Wuerth left for Europe June 26th and returned September 21st. Shortly thereafter he and Baumgartner made an investigation, discovered that things were not well with the floral company,

and, on October 3d, Lundgren was deposed as manager and Wuerth was put in full control. Some time before October 25th a new 90–day note was given in renewal of the first, which had expired September 20th. Lundgren was not a party to the new note, but defendants executed as makers. Wuerth and Baumgartner said they had not discovered the falsity of Stivers' representations at that time.

October 20th defendants borrowed $500 from plaintiff on their own note and used the proceeds to pay labor for the floral company. One hundred dollars was paid on this note a few days later. Defendants said they had not yet discovered the falsity of Stivers' representations. November 13th a receiver was appointed for the floral company, and later it became a bankrupt.

Defendants do not charge plaintiff with knowledge of Stivers' fraud on the ground that he was director of the bank. They recognize the rule that, as Stivers was acting in his personal interest, the bank was not responsible for his acts or knowledge. They charge knowledge of fraud on the part of the bank on the ground that Paul knew of the fraud and participated in it. Accepting the finding that Paul was present and heard the statements, the question is whether he is charged with knowledge of their falsity.

Although payee of the notes, plaintiff could be a holder in due course or its equivalent. *Price* v. *Klett,* 255 Mich. 354. To prevent recovery, the bank (Paul) must have had actual knowledge of the fraud or knowledge of such facts as constituted the act of taking the note bad faith (*Lincoln Investment Co.* v. *Metros,* 257 Mich. 215; *Merchants National Bank* v. *Detroit Trust Co.,* 258 Mich. 526; 2 Comp. Laws 1929, § 9305); such as facts which would operate

to create a belief in his mind that there was fraud. *Title & Trust Co.* v. *Jaster,* 241 Mich. 416, 419.

The record contains nearly 2,000 pages. We assume that defendants have collected in their briefs all facts which indicate Paul's knowledge of the fraud. The briefs fail to reveal any statement of facts or testimony which defendants claim show that Paul knew the falsity of Stivers' representations or was chargeable with the knowledge except the assertion that he must have known it from the records of the bank. They argue that the bank records show that the floral company was in a hopeless condition financially; that the bank held its notes for large sums upon which nothing had been paid for several years; that the notes had not been met except by renewals; that loans were made only when indorsed by responsible parties, like Stivers; and that without indorsers it had no credit at the bank. Aside from the fact that the argument consists of conclusions, and does not demonstrate Paul's knowledge of the falsity of the specific representations upon which defendants testified they relied, it is not justified by the testimony.

Paul became connected with the bank on March 31st, less than two months before the note was given. He had spent his time getting acquainted with customers. He knew the floral company only in a general way, as a borrower and depositor. He knew nothing of the details of its business. He came into conference, if he was there, interested merely in getting Stivers' obligations to the bank reduced. The adjustment of the various obligations was a primary purpose of the meeting, and it was openly discussed. At the conference Paul met men of affairs, known to each other but comparative strangers to him, two of them lawyers, armed with financial statements which they discussed, considering a busi-

ness proposition. The situation contained nothing which would raise a suspicion of fraud.

Had he consulted the records of the bank, as disclosed by the testimony here, he would have found the floral company had a small but active checking account, and that it owed notes indorsed by Stivers or Lundgren or both in varying amounts, ranging between $6,600 and $10,200 in 1929 and 1930, the loan account disclosing many substantial and small payments, renewals, and new loans. Neither the circumstances under which the note was given nor the bank records would impute to Paul the knowledge, belief, or even suspicion that the claimed fraudulent statements ·of Stivers, upon which defendants said they relied, were not true. See *World Manfg. Co.* v. *Hamilton-Kenwood Cycle Co.,* 123 Mich. 620. We find in the record no basis for a claim that plaintiff (Paul) acted in bad faith in taking the note.

The balance of the $500 note is recoverable by plaintiff on the same finding, although, regardless of fraud, plaintiff was entitled to a judgment thereon.

Defendants also contend that, as plaintiff knew of the fraud before bringing suit, it ratified and adopted the fraud by bringing suit, and, therefore, cannot recover. The rule counsel evidently have in mind would be applicable had Paul acted without authority in taking the note and had he known of the fraud so that the bank, by adopting his acts, would have been chargeable with his knowledge. It is not applicable here.

Judgment reversed, and cause remanded for entry of judgment in favor of plaintiff and against defendants for the balance on both notes, with costs.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.